EMIL KIEWERT CO. et al. v. JUNEAU et al.

(Circuit Court of. Appeals, Sixth Circuit. February 2, 1897.)

No. 420.

MORTGAGES—MORTGAGEE IN POSSESSION—ACCOUNTING FOR RENTS—ESTOPPEL.

One J. made a deed of property owned by him to the president of the K. Co., as security for his indebtedness to the K. Co., existing and to be incurred; it being agreed between the parties that the rents of the premises, after paying expenses, should be applied on J.'s indebtedness. The K. Co.'s office and the residence of its president were at a great distance from the town where the property was situated, and they employed an agent on the spot to attend to the renting. J. occupied a part of the premises, took the principal charge of them, and assisted the agent in obtaining tenants. The accounts of rents collected, rendered from time to time by the agent of the K. Co., were submitted to and indorsed by J.; and no complaint was ever made by him of a want of diligence in renting, or that more rent might be obtained. *Held* that, on an accounting by the president of the K. Co. as mortgagee in possession, J. was estopped to claim that the mortgagee should be charged with more than the amount of rents actually collected.

Cross Appeals from the Circuit Court of the United States for the Western District of Michigan.

Bill to foreclose a mortgage, in form a deed, executed for the purpose of securing an indebtedness then due, and further indebtedness then contemplated. The mortgagor in August, 1888, was indebted in the sum of $1,590 to the complainant the Emil Kiewert Company, a corporation of the state of Wisconsin. To secure this he made an absolute deed of conveyance to Emil Kiewert, president of said corporation. It is conceded that this conveyance was intended to secure the debt then existing, and such further indebtedness as should from time to time be created, to the Emil Kiewert Company. It was understood that the said company, or Emil Kiewert as trustee, should take possession of the premises, make necessary repairs, and apply proceeds of rents first to costs of repairs, taxes, and expenses, and remainder, from time to time, upon the indebtedness intended to be secured. This relation lasted more than four years, when some misunderstanding as to the state of the accounts resulted in the filing of this bill and a cross bill by Juneau, who claimed, upon a true accounting, to have overpaid his indebtedness. The matters involved were referred to a special commissioner, who was directed to state an account, charging the complainant with all rents actually collected, and all which by proper diligence might have been collected. The report found that the mortgagor was chargeable with rents aggregating $9,322.42, including interest. He also found that Juneau was chargeable with an indebtedness, including interest, of $9,293.57, leaving a balance due Juneau of $28.91. Each party filed exceptions to this report. The principal ground of ex-

ception taken by the complainant was that the mortgagee had been erroneously charged with rents not collected aggregating about $3,362.34. This exception was in part sustained, the circuit judge, on the facts, holding that the failure to rent out the premises was the mutual fault of the complainant and defendant, and that the loss should therefore be divided between them. It was therefore directed that the accounts should be altered so as to charge complainants with but one-half of the net loss resulting from failure to rent out the mortgaged premises. This operated to credit complainants with $1,818.83, that being one-half the loss of rent, with interest. Deducting from this the balance of $28.91 found in favor of Juneau left the latter indebted in the sum of $1,789.92, as due June 1, 1894. All other exceptions were overruled. Both parties have appealed, and assigned as error the overruling of their several exceptions to said report.

Fred Scheiber, for Emil Kiewert Co. et al.

Birney Hoyt, for Juneau et al.

Before HARLAN, Circuit Justice, and TAFT and LURTON, Circuit Judges.

After making the foregoing statement of facts, the opinion of the court was delivered by LURTON, Circuit Judge.

The mortgaged property consisted of a block of three two-story business houses, situated in the small village of Ironwood, Gogebic county, Mich. The lower rooms were fitted up for business purposes, and the upper story was adapted for separate use as apartments or offices. Elisha Juneau, the owner and mortgagor, had kept a saloon in one of them, and continued to do so for much of the time embraced in the accounting. For the room so occupied, he, for a time, paid rent to the agent of the complainant company. The complainant corporation had its place of business in the city of Milwaukee, Wis., and Emil Kiewert, its chief officer, and the trustee under the mortgage in question, also resided there. Under the circumstances, we shall treat this as if a mortgage made direct to the mortgagee, the holder of the legal title being the president of the mortgagee company. The object of the mortgage was to enable the mortgagee to collect current rents from tenants then in the property, or such as should succeed them, and apply the net receipts on the debt of Juneau then existing, or which might be thereafter created during its existence. Neither the complainant nor Emil Kiewert, the trustee, ever personally occupied any part of the premises. The great distance between the residence of complainants and the location of the mortgaged property made it necessary to intrust the renting and care of the property to a local agent. To this end, one Otto E. Karste, a resident banker, was made the agent of the trustee, and intrusted with the care and rental of the mortgaged premises. The actual rents collected and accounted for up to the close of the account stated by the special commissioner aggregated $3,879.10, excluding interest. Parts of the premises were from time to time vacant and unoccupied. Expert evidence was taken as to what would be a reasonable rental for the unoccupied premises. This the commissioner fixed at something in excess of $3,000, and reported that the mortgagee had not exercised due and reasonable diligence in respect to keeping said premises rented out, and was therefore

liable for the rents which by such diligence he ought to have realized. The exception of complainants to this charge was so far sustained by the court below as to divide equally the loss consequent upon the nonrenting of a part of the premises between the mortgagee and mortgagor, the court being of opinion that the fault was mutual.

. There are a great many peculiarities about this case which made )the relation between the complainants and the mortgagor, Juneau, quite exceptional. Juneau himself occupied one of the houses, and paid rent regularly for a time. For the remainder of the period the house he occupied is excluded from consideration, inasmuch as he himself was in possession. Karste, the agent of complainants, was a business man of character, and testified that he was unable to obtain acceptable tenants for much of the time, and that he mainly relied upon Juneau to secure tenants. Juneau was on the ground all the time, and did assume and exercise much authority over the entire premises; occasionally using or permitting the use of vacant premises as suited his occasion or fancies. He was in the habit of taking people who made inquiries about the premises to Karste, but seems in no active way to have sought out tenants. Ironwood experienced a period of great business depression between 1891 and 1894, which much affected rentals. Whether the failure to obtain tenants was due to the inactivity of Karste and Juneau, or to this general business depression, is, on the evidence, a question of much doubt. One fact is of great importance, and that is that, during this entire relationship, stated accounts were periodically made out by Karste, showing rents collected and moneys disbursed, which, after submission and indorsement by Juneau, were forwarded to the complainants. During this whole period, Juneau made no complaint to Karste as to the incorrectness of these statements, or as to any neglect in obtaining tenants. Neither did he make the slightest complaint to the mortgagors of the inefficiency or neglect of their agent. He knew precisely what Karste was doing or neglecting to do. He was himself voluntarily assisting in the renting of the premises, and was vitally interested in obtaining tenants and securing rents. He was in frequent communication, by correspondence and personally, with complainants during all this time, and yet made no complaint as to the management of this matter. Good faith required him to speak out, if he was conscious of any want of due diligence upon the part of Karste. His conduct was calculated to mislead, and could have no other effect than to induce the absent mortgagees to believe that due diligence was being exercised touching the management of the mortgaged premises. Undoubtedly, a mortgagee who takes possession before foreclosure of the premises is responsible for the reasonable rental value of the premises, if he actually occupy them. So, if he take possession for the purpose of renting them out, he is responsible for due diligence and reasonable thrift in obtaining acceptable tenants, in the collection of rents, and in the preservation of the property. His duty in possession is that of the ordinary prudent owner, and his liability, where he does not per-

sonally occupy, is for actual negligence in failing to make the property as productive as it might be in the hands of a reasonably careful and prudent owner. In Scruggs v. Railroad Co., 108 U. S. 368–375, 2 Sup. Ct. 780, it was said that, where the mortgagee's "possession is by tenant, she is accountable for such rents and profits as she could by reasonable diligence have received." But in this case the mortgagee, whose possession was by tenant, had employed a suitable and responsible agent. Undoubtedly, such a mortgagee cannot wholly discharge himself from all accountability to a mortgagor by proof that the management of the property had been intrusted to capable and responsible agents. For the neglect of such agents the mortgagee must ordinarily be responsible. But this case presents peculiar circumstances. The mortgagor was upon the premises constantly, and was relied upon largely by the agent to secure tenants, and did, in a way, interest himself in securing renters. The facts of this case make one where the mortgagor participated in the management of the mortgaged premises. If there was inefficient advertisement for tenants, or inactivity in securing acceptable renters, it was, as found by the circuit court, the result of the mutual fault of Juneau and Karste. If, as Juneau now claims, Karste was not duly diligent,—if he neglected to close with acceptable tenants or sufficiently advertise premises,—Juneau was at all times cognizant of such negligence. Yet he made no complaint, and gave no notice to the absent mortgagee of the agent's neglect, or of his intention to hold complainant to the technical responsibility of a mortgagee in possession. His participation in the mismanagement of this property, coupled with his silence, under the circumstances, makes it grossly unjust that he should now be allowed to hold the complainants for any part of a loss which might have been avoided but for his own inactivity, and neglect to notify the complainants of facts known to him and not known to them. In Hughes v. Williams, 12 Ves. 493, the facts were much those of this case. There it was sought to charge a mortgagee with negligence in underletting the premises. The lord chancellor said as to this:

"Another circumstance that weighs with me,—that the mortgagor, if he knows the estate is underlet, ought to give notice to the mortgagee, and to afford his advice and aid, for the purpose of making the estate as productive as possible. If he communicate to the mortgagee plans of improvement in his contemplation, which were disappointed by the embarrassment of his affairs, the court might take a stricter view of the mortgagee's conduct. In this instance, not only such notice was not given, but, during this whole period of sixteen years while the mortgagor was out of possession, he never stated that the estate was not managed as it might be. Can the mortgagor lie by, not giving notice that a great rent may be made, and come afterwards, by way of penal inquiry, to charge the mortgagee with the effect of his own negligence?"

The mortgagee's liability for rent, where his possession is only by tenants, must rest upon evidence of actual negligence, under all the facts of the case. This principle we think is fully supported by the authorities. 4 Kent, Comm. (12th Ed.) p. 166; 3 Pom. Eq. Jur. (2d Ed.) § 1216; Murdock v. Clarke, 90 Cal. 427, 27 Pac. 275; Gresham v. Ware, 79 Ala. 192; Hughes v. Williams, 12 Ves. 493;

Van Buren v. Olmstead, 5 Paige, 9; Gerrish v. Black, 104 Mass. 400–404. Though Juneau was under no legal duty to aid or assist the mortgagee's agent in the renting of the mortgaged premises, it is not unjust or inequitable to hold that his voluntary co-operation with that agent involved at least the duty of seasonably complaining to the ignorant and absent mortgagee of the mismanagement of which he now for the first time complains. The special commissioner took no notice of this misconduct, and the learned circuit judge was of opinion that its only effect should be to apportion the consequences. We think it wholly estops the defendant to now assert any claim for mutual negligence aggravated by his remarkable silence when it was his duty to speak. For this reason we think the account should be recast so as to charge complainants only with the rents actually reported as collected.

The other assignments of error must be overruled. They all involve disputed questions of fact, upon which both the special commissioner and court have agreed. Under such circumstances, a very plain showing of mistake must appear, to authorize this court to go behind such a report and decree of confirmation. Camden v. Stuart, 144 U. S. 104–118, 12 Sup. Ct. 585; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Turley v. Turley, 85 Tenn. 251, 1 S. W. 891. The cause will be remanded, and the decree modified in the particular directed. The costs of appeal will be paid by Juneau.