FERGUSON CONTRACTING CO. v. MANHATTAN TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1902.)

No. 1,090.

1. APPEAL—REVIEW—FINDINGS OF MASTER.
   Findings of fact made by a master on conflicting evidence, and confirmed by the court, will not be reviewed on appeal, unless a plain case of error or mistake is shown.

2. EQUITY—AMENDMENT OF PLEADINGS—DISCRETION OF COURT.
   Leave was granted to amend a cross-bill, which had been referred to a master for hearing, by a date specified, and the hearing was postponed to permit the reformation of the pleadings; but the cross-complainant filed no amended cross-bill, and proceeded with the hearing without asking further time. *Held*, that it was within the discretion of the court to refuse to permit an amended cross-bill to be filed on application made more than six months after the hearing had been closed, and the master had filed his report.

3. REFERENCE—ISSUES BEFORE MASTER—EFFECT OF PRIOR INTERLOCUTORY DECREE.
   A provision of a decree directing a sale of railroad property in a foreclosure suit, giving priority to a subcontractor's lien set up in a cross-bill, "to the extent that it shall be established," did not determine the validity of such lien, where that question was at issue under the pleadings, and had not at the time been tried, but left that issue, as well as the amount due the cross-complainant, to be determined on a subsequent reference to a master to take testimony and report his findings "on the issues arising under said cross-bill * * * and the answers and amendments thereto."

4. EVIDENCE—RELEVANCY TO ISSUES.
   Under a cross-bill to enforce a statutory lien on railroad property in favor of a subcontractor, evidence to prove an agreement, unsupported by allegations in the pleading, by the principal contractor to take, at a stipulated price, certain bonds of the company, which the subcontractor had contracted to receive in part payment for the work done, is irrelevant and inadmissible.

**5. SAME—ADDING TO WRITTEN CONTRACT BY PAROL.**

A parol agreement cannot be shown, to add new and distinct conditions to a written contract made between the parties at the same time, where neither fraud nor mistake is shown.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

John H. Miller and Cable & Parmenter, for appellant.

Doyle & Lewis, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, J. This case arises upon exceptions to the action of the circuit court in affirming the report of the master, to whom a controversy as to the lien of the appellant had been referred. It has been argued by counsel for the appellant apparently upon the assumption that this court may review such findings as to disputed matters of fact. The findings of a master as to disputed matters of fact have every reasonable presumption in their favor, and must stand unless error or mistake is clearly shown. Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Callaghan v. Myers, 128 U. S. 619, 9 Sup. Ct. 177, 32 L. Ed. 547; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. The rule is thus stated in 1 Fost. Fed. Prac. § 315:

"Every presumption is in favor of the correctness of the decision of a master. If the testimony is conflicting, the court will rarely interfere with the master's decision on the facts, provided he made no errors of law which affected the result."

In the present case the master has made a finding, and the circuit court a decree of confirmation of the report. Such circumstances require a very plain case of mistake to authorize the appellate court to go behind such a report upon matters of fact. Kiewert v. Juneau, 24 C. C. A. 294, 78 Fed. 708. In the light of this thoroughly settled practice, we shall proceed to examine the errors assigned, so far as reviewable here.

The Ferguson Contracting Company, appellant, claimed a lien upon the property of the Detroit & Lima Northern Railroad Company, Columbus & Northwest Division, for work and labor done thereon as a subcontractor. It is unnecessary in this connection to recite the various proceedings which led up to the foreclosure case in which it was sought to assert this lien. Proceedings progressed so far that on December 16, 1899, a decree was entered in the circuit court for the sale of the property. In that decree a provision was made for the lien claimed by the appellant, in the following words:

"The Ferguson Contracting Company having filed a lien for $78,836.14 against the portion of the property only which is located in Logan, Union, and Auglaize counties, and, in its cross-bill filed in the consolidated cause, having in its prayer for relief demanded that its claim shall be deemed a first lien upon that portion of the property of the railroad company in the aforesaid counties only, it is further ordered, adjudged, and decreed that the lien of the said Ferguson Contracting Company, to the extent that it shall be established in the consolidated cause, shall receive and be entitled to priority over the liens and claims of the said Strang and said Joshua J. Harmon, complainants, against Columbus & St. Mary's Extension, and, by

consent of John T. Adams, over any claims he may have for any amounts due him for payments made for right of way."

After decreeing a sale of the property for not less than the sum of $200,000, this further provision was made for the protection of the lien filed by the Ferguson Contracting Company:

"Upon such sale being made, a sufficient sum, representing the amount of the lien filed by the Ferguson Contracting Company, to wit, $78,836.14, shall be held by the clerk of this court to abide the ascertainment in the consolidated cause of the amount to which the said Ferguson Contracting Company shall be entitled under the lien so filed as aforesaid, or of any appeal that may be taken in said proceedings by said Ferguson Contracting Company, or the court may make such order as will protect said claim."

Afterwards, and by consent of parties, on January 29, 1900, a special master was appointed, with the following clearly-defined duties:

"To take the testimony, and report his findings of fact and conclusions of law to the court, with all convenient speed, on the issues arising under said cross-bill and proposed amended cross-bill of the Ferguson Contracting Company."

The case, up to the time of this reference order, stood, so far as the Ferguson Contracting Company was concerned, upon its cross-bill setting up a lien for work and labor done as a subcontractor upon the railroad. The Ferguson Contracting Company, preparatory to the hearing before the master, took leave to amend its cross-bill on or before February 7, 1900. When the parties appeared before the master on January 25, 1900, it is recited that considerable discussion was had between counsel as to the filing of amended pleadings, and as to when the hearing should be resumed, and it was stated by the master that the counsel for the Ferguson Contracting Company should have the amended cross-bill filed on or before February 7th, amended answers on or before the 10th, the hearing to be resumed on February 20th, replication to be filed on or before the day of hearing. When the parties appeared before the master on the day named, attention was called to the fact that the Ferguson Contracting Company had not filed its amended cross-bill. Nevertheless, without further application to the master for delay, or application to the court for further time, the counsel for the Ferguson Contracting Company proceeded to call witnesses to make out its claim, and the hearing was had. On July 3, 1900, the master's report was filed. Exceptions were filed to the report by the Ferguson Contracting Company on July 31, 1900. On March 11, 1901, that company made a motion in the circuit court for leave to withdraw its cross-bill and file an amended cross-bill. The circuit judge refused to allow this amendment, filing an opinion upon the application, in the course of which he said:

"No good reason is shown for the failure of the Ferguson Contracting Company to file an amended cross-bill within the time limited by the order of reference, to wit, on the 7th day of February, 1900, and prior to the hearing before the master; and an inspection of the proposed amended cross-bill, in view of all the circumstances of the case, fails to satisfy me that the leave should be granted."

When this application for leave to file an amended cross-bill was made, the cause had been heard before the master. At that stage of the case the granting of the amendment was clearly discretionary

with the court. 1 Bates, Fed. Eq. Proc. § 143; Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590. We can perceive no abuse of discretion in the refusal to grant the amendment. Leave had been granted to amend, ample time for compliance had intervened, and not until long after the hearing was any attempt made to have an order for further leave to amend. Clearly the circuit court did not abuse its discretion in the order made, refusing further opportunity for amendment.

We come to the question as to whether the master erred in his rulings of law in excluding testimony under the issues as they stood before him upon the pleadings filed. It is argued by counsel for appellants that after the decree of December 16, 1899, no question of pleading was involved, and it remained only to determine the amount due on the claim of the Ferguson Contracting Company for whatever amount the testimony might show it was entitled to recover. That decree does not, in our opinion, bear such construction. The Ferguson Contracting Company had filed a lien upon the railroad property. That lien it had duly set up in its cross-bill filed in the case. It was such lien, to the extent that it might be established, that was to be given the priority fixed in the decree. At that time pleadings were on file denying the validity of the lien claimed by the Ferguson Contracting Company, and denying that the same had been procured in conformity to the laws of Ohio, as averred in the cross-bill. The decree did not find that the lien was valid or invalid. It is true, it is given priority over certain other liens, but only to the extent that it is established in the subsequent proceedings. Counsel evidently regarded it necessary to duly plead their additional claims, as is evidenced by the application for leave to file an amended cross-bill. The subsequent order of reference to a master relieves this subject of any doubt. He was ordered to take the testimony, and report his findings "on the issues arising under said cross-bill of the Ferguson Contracting Company and the answers and amendments thereto." This order was at once the chart and limitation of the master's authority. He was to hear the issues made upon the pleadings as they stood or might be amended in conformity to the leave granted by the court. Did the master, in his refusal to receive the testimony offered under the issues made, commit error? As already stated, the case stood on issues made as to the cross-bill of the Ferguson Contracting Company, setting up a lien for work done and material furnished. It is unnecessary for the present purpose to set out at length the several contracts that had been entered into between the parties prior to the receivership in the original cause, in which the proceedings under review were had. The master finds, as the proofs show, that the representatives of the Ferguson Contracting Company and one Strang, who was the principal contractor of the road, on October 12, 1898, entered into a certain agreement in writing, by the terms of which the Ferguson Contracting Company, upon the payment of the final estimate of $26,000, agreed to accept the same as a compromise and in full of all work and material furnished up to September 6, 1898, the date of the receivership, and agreed to sign receipts for any and all claims and

demands for work so done upon the payment of the amount agreed upon. There was conflicting testimony before the master, but his finding is conclusive upon us that this proposal was accepted in writing, and became a contract between the parties. To the offer to show by parol that Strang agreed before the execution of the contract to carry out the terms of a certain prior agreement to take care of bonds of the railroad which the complainant had contracted to receive, at the rate of 90 cents on the dollar, the master, as well as the circuit court in confirming the report, made answer that to receive such testimony would be to alter, vary, and add to the terms of a written contract, and furthermore would, if received, permit proof of a contract not set up in the cross-bill upon which the case was heard.

We think both positions were well taken. It is elementary law that the proof and the allegations must correspond. The most liberal construction of the cross-bill on a lien for work and material could not include an agreement to take the bonds at 90 cents on the dollar. The attempt to show that the contract was not what it appeared to be in writing,—to take $26,000 in full payment of all claims,—but included an agreement to take the bonds of the complainant at 90 cents on the dollar, was in plain violation of the rule of evidence which excludes parol evidence when offered to vary, qualify, contradict, or to take from or add to the terms of a written contract. In the absence of fraud, accident, or mistake, the rule is the same in equity as at law,—that parol evidence of an oral agreement cannot be permitted to vary, qualify, or contradict the terms of a written contract. Forsythe v. Kimball, 91 U. S. 291, 23 L. Ed. 352; Bast v. Bank, 101 U. S. 93, 25 L. Ed. 794. Surrounding circumstances may be shown for the purpose of ascertaining the subject-matter of a contract, but not for the purpose of adding a new and distinct undertaking. Maryland v. Railroad Co., 22 Wall. 105, 22 L. Ed. 713. The evidence offered was not for the purpose of putting the court in the possession of the surrounding facts to enable it to properly interpret an ambiguous contract, or to show an independent parol agreement, based on consideration, upon a subject-matter not covered by the writing. Nor is the situation bettered for the appellant upon the theory that the written agreement of October 2, 1897, required Strang to take the bonds at 90 cents on the dollar, which he agreed to carry out when the written agreement of May 11, 1898, was made between the parties. In the latter contract the Ferguson Contracting Company agreed to accept the sum of $26,000 as a final estimate for all work done and material furnished upon the Detroit Extension of the Detroit & Lima Northern Railroad, upon the condition that a certain subscription to the bonds of the company should be canceled, and the amount paid thereon refunded. It was also agreed therein to accept the railroad company's bonds at 90 cents on the par value to the extent of 30 per cent. of the estimates in favor of the Ferguson Contracting Company under the contract for that portion of the road—the Columbus Extension—upon which the lien in controversy is claimed. To show the proposed parol agreement as to this contract would be no less in violation of the settled rule of law which

prevents contemporaneous or previous parol agreements being shown to vary written contracts. The contract of October 2, 1897, in writing, upon which so much reliance is had, contains no agreement to take the bonds of the Ferguson Company at 90, or, as we construe it, at any price. It was one of the two subscription contracts for bonds of the railroad company. It was for 60 bonds at 90, to be paid for by applying 30 per cent. of the contractor's estimate to the extent of 40 cents on the dollar; the remaining 50 cents to be "carried" with the bonds as collateral until the completion of the work, and thereafter, if required, until they could be sold at 90 cents on the dollar. The Ferguson Company could doubtless, if it chose, pay up the 50 cents on the dollar and acquire the bonds. But we find no agreement in the writing to take the bonds from it at 90, or make them good for that amount to the Ferguson Contracting Company.

This ruling as to the correctness of the master's holding disposes of the questions of law reviewable here, so far as the attempt to establish the lien is concerned. In attacking the credits claimed in Strang's answer on account of the balance due on a certain note of $17,000, after applying bonds put up as collateral, the like claim is made as to an agreement not to sell these bonds at less than 90. This offer was to violate the terms of the written agreement giving authority to sell the bonds upon the nonpayment of the notes.

Nor is the conclusion different in view of the order of confirmation of sale, October 27, 1900, not in the printed record, but filed by the consent of parties since the argument, as follows:

"The claim of the Ferguson Contracting Company now standing on exceptions to the report of the master as to the amount due said company shall proceed according to the rules of this court to final hearing, and for any amount finally found due to the said Ferguson Contracting Company upon its cross-bill hereinafter filed, or any amendment thereto which may be allowed by the court, it shall be entitled to payment in full, without reference to any other distribution and as a preferred claim, as provided in said decree of sale; and the said purchaser, or his assigns or successors in the said property, or any part thereof, shall, within ten days from the entry of final judgment determining said amount, pay the same into the registry of this court for the use and benefit of the Ferguson Contracting Company, or its assigns, or whomsoever shall be found to be entitled thereto; and in default of such payment the court reserves the right to retake the property, or so much thereof as may be necessary, and resell the same for the purpose of making such payment."

That order was evidently made for the purpose of preserving the lien and securing payment of the Ferguson Company's claim for the amount which might finally be found due "upon the cross-bill herein filed, or any amendment thereto which may be allowed by the court." At that time the court had not passed upon the exceptions to the master's report, or the application to file amended cross-bill. There is no complaint here that the amount found due will not be paid. The real controversies are as to whether the master and the court correctly decided the issues made on the cross-bill, and properly disallowed the application for leave to further amend. Near the conclusion of the order of confirmation of sale, it is further provided as to the claim of the Ferguson Contracting Company:

"But it is expressly ordered that no distribution herein made shall have the effect of in any manner postponing the priority of the Ferguson Contracting Company for any amount which shall be due it, as the same is preserved and provided in said decree; and as to the claim of said Ferguson Contracting Company, or D. H. Campbell, the complainant, the same having been set up by pleadings already filed, it will not be necessary for them, or either of them, to present their claims to said master under this order."

This does not enlarge the claim of the cross-complainant beyond that set up in its pleadings.

We are better satisfied to allow the rulings of law above referred to to stand, in view of the master's findings, which are fully supported by the testimony as to the extent and character of the lien of the Ferguson Contracting Company. After the appointment of the receiver, September 6, 1898, the parties in interest, at a conference held for the purpose of devising ways and means to obtain payment of their claims against the insolvent company, and after diligent attempts at inflation, were only able to get the Ferguson Company's claim up to $26,261.22. Upon settlement it was incorporated in the lien taken by Strang for $26,000. The master finds this sum to be in excess of the true sum due by $15,000. No claim is made in the lien filed by the Ferguson Company that bonds were to be redeemed at 90. The master further finds that prior agreements as to the work and material were merged in the agreement in writing of May 11, 1898, as to the cancellation of the subscription for 70 bonds, payment of $29,000 on Detroit Extension; and on Columbus Extension, to take 30 per cent. of estimate in bonds at 90. The master also finds the lien of the Ferguson Company void for failing to give the notice required by the Ohio law. As we have seen, the original decree of December 16, 1899, did not undertake to validate the lien, but gave it priority so far as established. Doubtless these considerations, with others, appealed to the circuit court in exercising its discretion upon the application for amendment of the pleadings.

Much argument is had as to the correctness of the master's allowance of credits on the $26,000 which he finds was the amount for which the Ferguson Company's claim may be considered as a lien, because of its incorporation into the Strang lien. These credits were allowed upon the testimony, which was, to say the least, conflicting; and the master's conclusions of fact, affirmed by the circuit court, are binding upon us in the absence of plain mistake or unsupported conclusions.

Finding no error in the proceedings complained of, the decree of the circuit court is affirmed.

We feel constrained to notice the comments made in appellants' brief upon the report and rulings of the master, which are referred to as "pitifully ridiculous,"—one of his findings being characterized as a "mere subterfuge, almost a fraud on its face,"—and an alleged error is charged to be "intentional." There is nothing in the record and the reported rulings of the master calling for or in any wise excusing such comments, and they should not have been made in the brief. The master is well known to the court as a gentleman of high character

and a lawyer of ability. The rulings referred to have been sustained by the courts before which they have passed in review. The expressions may be regarded as stricken from the brief.