BRIGGS v. NEAL et al.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

No. 434.

1. EQUITY—SPECIAL MASTER—APPOINTMENT OF DEPUTY CLERK.

Where a circuit court determines that a special reason exists for appointing a deputy clerk special master, such appointment is not reversible error because, through inadvertence, the reason is not assigned in the order, as required by Act March 3, 1879 (20 Stat. 415 [Comp. St. 1901, p. 591]).

2. RECEIVERS—REVIEW OF APPOINTMENT—DISCRETION OF COURT.

The appointment of a receiver is discretionary, and will not be reviewed unless a gross abuse of discretion is shown.

3. EQUITY—REFERENCE TO MASTER—WHEN PROPER.
   Where a bill presents a case in which the taking of an account is necessary, a reference to a master may properly be made on the pleadings, and notice to the defendant is not essential.

4. INJUNCTION—REQUIRING BOND—DISCRETION OF COURT.
   Requiring a bond as a condition to the granting of a preliminary injunction is a matter within the discretion of a circuit court.

5. MORTGAGES—LIABILITY OF MORTGAGEE IN POSSESSION.
   A mortgagee, put in possession of a going concern which by the terms of the mortgage he is required to keep in operation, cannot be charged with the rental of the property while so in his possession, but his duty is to operate the plant as would be done by an ordinarily prudent owner, and his liability is only to account for the net proceeds of the business.

6. APPEAL—REVIEW—FINDINGS OF FACT.
   While findings of fact made by a master and concurred in by the Circuit Court are entitled to great weight, and will generally be followed by the Appellate Court, they are not conclusive, and it is the duty of the Appellate Court to examine the record and form its own conclusions.

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina, at New Berne.

For opinion below, see 110 Fed. 477.

James E. Shepherd and Edward R. Baird, Jr., for appellants.
W. W. Clark, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the Circuit Court of the United States for the Eastern District of North Carolina. The cause originated in the superior court of Carteret county, in the state of North Carolina. It was commenced by summons and complaint on the part of R. S. Neal, and John Dunn and O. H. Guion, assignees of Neal, and E. K. Bishop, on behalf of himself and other creditors of Neal, against George S. Briggs, trading as George S. Briggs & Co. After certain proceedings had in the state court, which will be referred to hereafter, the cause was removed into the Circuit Court for the Eastern District of North Carolina, and the answer of the defendant was filed.

R. S. Neal was a manufacturer of lumber in the town of New Berne, N. C., and George S. Briggs & Co. were commission merchants, sellers of lumber in the city of Norfolk, Va. On 22d March, 1900, an agreement in writing was entered into between these parties, whereby on his part Neal agreed to deliver to George S. Briggs & Co. all lumber manufactured at his mill on Bogue Sound, near Morehead City, Carteret county, N. C., from 22d March, 1900, up to and until 15th February, 1901, using all necessary and proper care in the manufacture of the lumber, so that it could be sold to the best advantage, and to manufacture, ship, and deliver the same in accordance with the directions and specifications of Briggs & Co., furnishing a statement daily or weekly, as may be required, of all timber cut and manufactured at the mill, the lumber to be inspected

¶ 4. See Injunction, vol. 27, Cent. Dig. § 323.
   120 F.—15

by a competent inspector at the mill as each car load or cargo is loaded, and the mill to be insured for the benefit of Briggs & Co., at cost of Neal. Neal agrees that Briggs & Co. shall receive 5 per cent. on all gross sales of lumber. Further, in consideration of an advance by Briggs & Co. of $5,000 to Neal, to be used in the operation of the mill and in the purchase of a steamer and of timber, it is agreed that Briggs & Co. shall be entitled to deduct from all sales of lumber $1 a thousand feet so long as the $5,000 advance is not paid. When $1,250 are paid, they can deduct 75 cents a thousand; when $2,500 are paid, 50 cents a thousand; and 25 cents per thousand when $750 ($3,750) are paid; with the right in Neal to anticipate his notes. The usual discount on all advances is to be paid by Neal. The payment of the $5,000 advance is acknowledged, and is represented by three notes, two of these each for $1,250, payable at six and nine months, respectively, from date of contract, and one for $2,500, payable 15th February, 1901, all without interest. On their part, Briggs & Co. agree to furnish all necessary vessels or barges for transporting lumber, on notice of its readiness for delivery, to handle all lumber received and dispose of it upon the best markets and at the best prices obtainable therefor, in the exercise of their best judgment to that end, and to render to Neal a statement of every cargo or car load delivered. They also agree to advance to Neal on all lumber at the mill or in sheds or in the yards $4 per thousand feet as and when said lumber has been manufactured and insured at Morehead, and also, when each cargo of lumber is loaded on a vessel or car or barge and a clean bill of lading signed, duly sent and presented to Briggs & Co., such further sum, in addition to the $4 per thousand, as will equal two-thirds of the cash value of said cargo at the mill, and to pay to Neal the other one-third of selling price of the lumber 10 days after its arrival at the point of destination and it is discharged, inspected, and accepted, less the sum authorized to be deducted under this agreement. In order to secure his performance of his contract, and especially the repayment of the advances, Neal mortgages the steamer Nellie, the sawmill, and all the plant, and four tracts of land fully described. Neal to remain in possession until default, and, in case of default, Briggs & Co. to have the right to enter into possession and cause the lumber to be cut and delivered, the sawmill to be operated in the manufacture of lumber, until so much has been cut and manufactured as will repay all advances and all expenses incident to the manufacture of the lumber, a duty imposed by this contract on Briggs & Co.

Numerous shipments were made by Neal to George S. Briggs & Co. under this contract until September, 1900. At this time Neal became largely involved, and was forced into an assignment for the benefit of his creditors. A few days before this he had telegraphed Briggs to come to Morehead City. Upon his arrival, Briggs met Neal and his counsel, Mr. F. H. Busbee. Neal then stated that he owed other parties beside Briggs & Co. $18,000, and asked Briggs to make further advances to him. This Briggs was willing to do, if he were secured. Neal could not secure him, and, under the advice of Mr. Busbee, he turned over the whole mortgaged property to

Briggs. Then in a few days he made the assignment above spoken of, and in it he stated his debt to Briggs to be $8,350. Very shortly thereafter the suit was brought in Carteret county. The burden of the complaint is that out of the lumber shipped to him by Neal, and that turned over to him, Briggs had received full satisfaction for all sums advanced by him to Neal. Under the prayer of the complaint an injunction was issued against Briggs & Co. restraining them from operating the mill, and the assignees in the assignment were made receivers. The injunction was continued, and the receivers were confirmed in the federal court. After defendant appeared in the court below, he moved to dismiss the bill on a ground to be stated hereafter. This being refused, he answered, denying all the main allegations of the bill, and insisting that the debt and advances were not paid. Upon hearing the bill and answer, the court referred the cause to the deputy clerk of his court, as special master. This is made a ground of exception, and will be discussed hereafter. The court also allowed the testimony to be taken and the references to be held at New Berne, instead of at Elizabeth City, where the court was then sitting. This also is one of the grounds of exception to be discussed hereafter. The master held references, took the account between the parties, examined witnesses, and made a report giving his findings of fact and stating his conclusions of law. There is nothing in the record showing that the parties consented to refer the case to the master to hear and decide the issues. So the report was treated as merely advisory to the court, to be accepted and acted on, or to be disregarded, according to the judgment of the judge. The master found, as a conclusion of law from his facts, that the defendant was indebted to the plaintiff Neal, after giving him all proper credits, in the sum of $5,108.15. To the findings of the master, exceptions were taken. At the hearing, the court sustained the master. An appeal was allowed, and the case is here on seven assignments of error.

In this connection the selection of the deputy clerk as special master is objected to. It is a bad practice to appoint clerks or their deputies special masters. It is forbidden by the act of Congress of March 3, 1879 (20 Stat. 415 [U. S. Comp. St. 1901, p. 591]), except when the judge shall determine that special reason exists therefor, to be assigned in the order of appointment. In the present case his honor assigns in his opinion a special reason for the appointment. Its omission in the order must have been an inadvertence. This is not reversible error.

1. The first assignment of error is that the appointment of receivers and of a special master, at the first presentation of the bill in the court below, was premature, there being no proof in the record making their appointment necessary or proper, and no proof of complainants' claim, and no notice given to defendant or his counsel. The appointment of a receiver is a matter within the discretion of the court, and will not be reviewed unless there be a gross abuse of the discretion. Bates, Fed. Proc. § 582. We see no abuse of it here. The bill presented a case in which it was absolutely necessary to take an account. This being so, a reference was also neces-

sary. The practice to refer such a matter to a master is invariable. Field v. Holland, 6 Cranch, 8, 3 L. Ed. 136; Dubourg de St. Colombe's Heirs v. U. S., 7 Pet. 625, 8 L. Ed. 807.

2. The second assignment of error is hardly in compliance with the twenty-first rule of the Supreme Court and the eleventh rule of this court. It embraces five distinct grounds of error. These rules require that the assignments of error shall set out separately and particularly each error asserted and intended to be urged. This second assignment charges error in the court in overruling defendant's motion to dismiss the bill on the ground that it was vague, uncertain, and indefinite. We see no error in the action of the court. This assignment also charges as error that the court did not dismiss the bill, in that it did not state facts sufficient to constitute a cause of action. A motion of this kind belongs to code pleading. It has no place in equity practice. If the motion had been to dismiss the bill for want of equity, it could not have been granted, because the bill prayed an account, which is a ground of equity jurisdiction. This assignment also objects to the bill because it was signed by Neal alone, and he had already parted, by assignment, with all his interest in the property. The twenty-fourth rule in equity requires a bill to be signed by the counsel, for reasons stated in the rule. This bill is signed by all the counsel for all parties complainant. Neal only verifies the bill, the facts stated therein being practically within his knowledge. This assignment also alleges as error that no bond was required in granting the injunction. This is a matter within the discretion of the judge granting the injunction. Meyers v. Block, 120 U. S. 206, 7 Sup. Ct. 525, 30 L. Ed. 642; Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060.

The fourth assignment of error brings up the merits of the controversy. The Supreme Court of the United States and this court have frequently announced that the concurrence of the court below in the findings of fact of a master have great weight, and will be generally followed in the Appellate Court. But although this is the general rule, still the Appellate Court may, and indeed should, examine the record and come to its own conclusion. The case before us is one requiring this course.

When Neal, after doing business with George S. Briggs & Co., under the contract, from March to September, had an interview with Briggs, in which he was assisted by his attorney, Mr. Busbee, he stated that he was indebted to Briggs & Co. about $8,000. The master in his report finds as a fact that, instead of being a debtor, Neal was a creditor, of George S. Briggs & Co. in the sum of $5,-108.15, growing out of a volume of business, in all $21,683.47. This result is sufficiently startling to induce an examination of the testimony. Briggs & Co. and Neal were business men of experience. They were dealing with each other under a written contract. By that contract Neal cut, manufactured, and prepared lumber for market, shipping it under orders from Briggs & Co. These orders specified the character of the lumber and the price. And in nearly every instance of shipment the order stated the price at which the lumber sold. This mode of doing business was kept up from March to Sep-

tember. During that whole period Neal made no complaint or objection whatever to the dealings of Briggs & Co. Even when he failed, and was compelled to stop, he called on Briggs & Co. to aid him, and, failing to get such assistance, he fulfilled his contract, turning over the mortgaged property to Briggs & Co. He did this, fortified and aided by the advice of able counsel. It goes without saying that had Neal at that time communicated to Mr. Busbee any suspicion of bad faith on the part of Briggs & Co., any reason to suppose that, so far from being a creditor of Neal, Briggs & Co. owed him money, were accountable to him for a course of fraudulent dealing, this learned and faithful lawyer would have been the first to call a halt and to defy any action on the part of Briggs & Co. The conclusion is irresistible that at that time Neal was satisfied that the claim of Briggs & Co. upon him for advances and commissions, to the extent of some $8,000 and upward, was just and reasonable, and that he so instructed Mr. Busbee. After Neal made his assignment he began to challenge the account of Briggs & Co., and to seek to surcharge and falsify it. His testimony to this end consists for the most part of conjecture, of what he heard from others, and of the result of other sales of lumber. It must be borne in mind that Neal charges a skillfully wrought scheme of fraud, carried on in many transactions. His indictment against Briggs & Co. is that they obtained control of his lumber, and systematically sold it at one set of prices and accounted to him for another. Fraud never is presumed. He who charges it must take the burden of proving it. And the proof must be of such a character as to rebut the presumption that in the ordinary transaction of business men generally act fairly. A discussion of the testimony in detail is not necessary. We have carefully examined it, and the great preponderance of the evidence sustains the correctness of the account of Briggs & Co. Neal, pursuing the terms of the mortgage, surrendered possession of the mortgaged property to Briggs & Co., the mortgagees. They remained in possession some weeks, and were removed by the receivers under order of court. Among the property mortgaged were the tugs Nellie and Moore, as well as the mill and the timber on the land. Briggs & Co. operated the mill, cut timber, and used the tugs. These tugs had been purchased for and were used in the operations of the mill. The special master found that Briggs & Co. were chargeable with the rent of the mill, and the rent of the tugs whilst in possession, and also for the timber used by them.

A mortgagee put into possession of a going concern, under the operation of the mortgage, goes in as a quasi trustee or bailiff for the mortgagor. Jones Mortg. § 1116. He takes the business as he finds it, and conducts it to the best advantage. His duty in possession is that of an ordinarily prudent owner, and his liability is for negligence in failing to make the property as productive as it might be in the hands of a reasonably careful and prudent owner. Kiewert Co. v. Juneau, 24 C. C. A. 297, 78 Fed. 708; Schaeffer v. Chambers, 6 N. J. Eq. 548, 47 Am. Dec. 211. Out of the proceeds he pays all necessary current expenses, reimburses himself for all sums paid in taxes and necessary repairs. Jones, Mortg., supra; 4 Kent, Comm.

(14th Ed.) 106. And he applies the net results toward the debt due to him. Of course, he has the right to use the mortgaged plant for this purpose. He is in no sense the tenant of the mortgagor, and as to the personalty mortgaged he is the owner. This being so, Briggs & Co. are not chargeable with rent either of the mill or of the tugs. Even if they were, this rent would be a part of the expenses of the business, payable out of the gross proceeds. The master erred, therefore, in charging Briggs & Co. with these rents. With regard to the timber cut and used, Briggs & Co. have accounted for this in the report of the operations of the mill, and cannot be charged with it separately. The account of Briggs & Co. is subject to a deduction of all acceptances charged in it which have not been paid by them. In this respect the conclusions of the master are correct.

The decree of the Circuit Court is reversed, and the case remanded to that court, with instructions to state the account between Neal and Briggs & Co., allowing as credit to the latter the amount of his account—$8,210.16—and such demurrage as Briggs & Co. were compelled to pay by reason of default of Neal, and charging against said account any acceptances of Neal's drafts unpaid by Briggs & Co., as also the profit realized by Briggs & Co., after taking possession of the mill and plant, deducting all necessary expenses for drying and handling and manufacturing the lumber on hand when the possession was taken by Briggs & Co. of the mill and plant, and for necessary repairs.

Reversed.