FIRST NAT. BANK OF SAN FRANCISCO et al. v. DETROIT TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1918.)

No. 2912.

1. MORTGAGES ⬅468(1)—FORECLOSURE—APPOINTMENT OF RECEIVER.

The power of a court of equity to appoint a receiver in foreclosure proceedings, with authority to continue the business of the mortgagor is one which is cautiously exercised; but the court in its discretion may grant such relief when such a course seems necessary to preserve the property or secure a more advantageous disposition; hence, on a bill to foreclose a mortgage on the property of a lumber company, where it appeared that if the property was ordered sold on foreclosure its full value would not be realized, and the proceeds would be entirely absorbed by the first mortgage, and the first and second mortgagees and a majority of those secured by the third mortgage all requested or assented to the appointment of receiver, with authority to continue the business, such an order was proper; continuance of operation being necessary to preserve the property.

2. APPEAL AND ERROR ⬅955—REVIEW—DISCRETION OF TRIAL COURT—RECEIVER.

An order of the trial court on a bill to foreclose a mortgage, directing the appointment of receiver and operation of the property, will not be disturbed on appeal, unless so improvident and improper as to be an abuse of power.

3. MORTGAGES ⬅473—FORECLOSURE—RECEIVER.

Where a receiver was appointed and operation of the mortgaged premises ordered upon a bill to foreclose the first mortgage, those secured by a third mortgage cannot complain that they were deprived of their right of redemption in a portion of the property by reason of the approval of the receiver's logging contract, for they might at any time exercise that right by satisfying prior incumbrances, in which event the receiver would necessarily be discharged and cancellation of his contracts directed.

4. MORTGAGES ⬅159—PRIORITIES—CONDITIONS.

Where the first mortgage on timber lands and other property of a lumber company authorized the cutting and removal of timber on payment to the trustee of a fixed sum per thousand feet, those accepting a third mortgage subject to the conditions of the first cannot complain of the cutting and removal of timber pursuant to that provision.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Bill by the Detroit Trust Company and Alexander McPherson, as trustees, against the S. E. Slade Lumber Company and others, on

---

which a receiver was appointed. Thereafter the First National Bank of San Francisco and others intervened by petition, seeking modification of the order allowing the receiver to operate the property of the principal defendant and to enter into a logging contract. From an order denying the petition, petitioners appeal. Affirmed.

On September 1, 1910, the S. E. Slade Lumber Company mortgaged a large tract of timber lands in Grays Harbor county, Wash., and a sawmill plant in the city of Aberdeen, Wash., to the Detroit Trust Company and Alexander McPherson, as trustees, to secure an indebtedness of $1,000,000. On March 1. 1915, the Lumber Company made a second mortgage to the Detroit Trust Company to secure an indebtedness of $69,000. On April 30, 1915, certain creditors of the Lumber Company, to wit. the American National Bank of San Francisco, Welch & Co., the United States National Bank of Portland. the Slade-Wells Logging Company, the Humptulips Logging Company, the First National Bank of San Francisco, the Coats-Fordney Logging Company, the Saginaw Timber Company, and the Sudden Estate Company, entered into an agreement for the purpose of securing their claims and providing for the advancement for a period of one year, and optionally for two years, of money sufficient to pay the interest on the first mortgage bonds, the interest on the second mortgage, and the taxes and insurance premiums on the property, on condition that the first mortgagee would for one year, and provisionally for two years, waive the collection of the principal of the maturing bonds secured by the first mortgage. Thereupon, to protect said unsecured creditors, the Lumber Company executed to the First Federal Trust Company and to Milton R. Clark, as trustees, a mortgage on the property covered by the first and second mortgages and on other property. Said creditors' agreement provided that the parties thereto should be represented by a committee consisting of Kennedy, representing the First National Bank of San Francisco, Bowles, representing the American National Bank of San Francisco, and Welch, representing Welch & Co., which committee was given power to act unanimously only, and not by a majority, and the third mortgage provided that the trustees therein should be under no obligation or duty to perform any act thereunder, unless requested in writing by the representatives so appointed, and that the trustees should have the exclusive right of action under the mortgage, and that none of the beneficiaries should be entitled to commence any action, unless the trustees should refuse or fail so to do when properly requested.

On August 3, 1916, the appellees herein commenced their suit to foreclose the first and second mortgages. Thereafter they filed a petition for the appointment of a receiver, with power to take possession of the mortgaged property and to manage and operate the same by logging contract or otherwise. To this petition the Humptulips Logging Company and Slade-Wells Logging Company assented, and Bowles and Welch, two of the three members representing the creditors, requested the appointment of a receiver as prayed for, as did also the American National Bank of San Francisco and Welch & Co. The receiver was appointed and, with the approval of the court, entered into a logging contract with the Humptulips Logging Company. Thereafter the appellants herein petitioned the court to vacate the order appointing the receiver with power to operate, alleging that the trustees of the third mortgage were under no obligation to perform any duty under that mortgage, unless requested so to do in writing, by the duly appointed representatives, and had not appeared in or taken any action in the premises; that the American National Bank of San Francisco and Welch & Co., which had joined in a request for the appointment of a receiver, had refused to join with the petitioners or to request the trustees to act in the premises. The trustees under the third mortgage made no appearance in the suit. They, however, brought an independent suit against all the beneficiaries under that mortgage for instructions as to their powers and duties, and after hearing the court decreed in that suit that, in the absence of unanimous instructions from Kennedy, Bowles, and Welch, the trustees were under no ob-

ligation to appear in the foreclosure suit, and the court by its order authorized all of the beneficiaries under the third mortgage to appear in the suit and take such action as they might deem proper. Thereupon the American National Bank of San Francisco, Welch & Co., United States National Bank of Portland, Slade-Wells Logging Company, and Humptulips Logging Company, being a majority in number and amount of the beneficiaries under the third mortgage, filed an answer in the foreclosure suit, alleging that, under the terms of the creditors' agreement and the third mortgage, the appellants had no right to appear and contest the appointment of a receiver with power to operate, and alleging that, if the beneficiaries under the third mortgage are proper parties defendant, then the order of the court appointing a receiver with power to operate and enter into a contract with the Humptulips Logging Company should be continued in force.

In support of the appointment of the receiver, with authority to enter into the logging contract, affidavits were presented, the substance of which is as follows: That owing to the condition of the timber market the Lumber Company was unable to sell its timber lands or to pay its debts as they matured, and that if the Lumber Company's property were forced to sale it would not bring enough to pay the debts of the company; that it was absolutely necessary, for the preservation of the property and to prevent its waste and deterioration, that a receiver be appointed to log the timber lands and apply the proceeds to the payment of taxes, insurance, and other incidental charges, and to the extinguishment of the company's debts; that in no other way than by logging operations could moneys be raised sufficient to pay the Lumber Company's debts; that, if such operations were not immediately commenced and continued, the property would seriously deteriorate in value and the company would incur very decided danger of loss to the timber from forest fires, which danger might be greatly reduced by the employment on the property of a force of men engaged in logging; that there were then about 12,-000,000 feet of fir logs, of the value of $70,000, which had been cut and were still lying in the woods, which would deteriorate in value unless soon removed and sold; and that it would be for the best interests of all the creditors of the Lumber Company, and more particularly for the interests of those secured by the third mortgage, that the timber lands be cut and logged and the logging contract be carried out. It was further shown by several affidavits that, by conducting logging operations under the logging contract for a period of two or three years, the indebtedness of the Lumber Company would be so reduced that it would be possible for it either to refinance its obligations, or to sell its properties at a price more than sufficient to pay all its indebtedness. The showing was that the total indebtedness of the Lumber Company was about $1,200,000, and that the creditors, aggregating five-sixths of the total thereof, asked for the continuance of the receiver under the order of the court.

The logging contract which the court authorized the receiver to make gave the Logging Company the right to cut and remove not less than 50,000,000 feet of timber per annum, to market and sell the same, with all possible dispatch and at the highest market price obtainable, the proceeds to be applied, first, to the cost of driving, booming, and towing the logs to market, not exceeding $1.30 per thousand feet, to be paid to the Logging Company; second, $3 per thousand feet was to be paid to the receiver; third, the actual logging expense was to be paid to the Logging Company; fourth, the remainder, up to $1 per thousand feet, was to be paid to the Logging Company as its profit; and, fifth, any balance remaining thereafter was to be paid to the receiver. The receiver reserved the right to sell the logs on paying the Logging Company the cost of logging and its profit of $1 per thousand feet, but this was not to be done unless the receiver realized at least $3 per thousand feet and the Logging Company its expenses and profit. It was further provided that the contract should remain in force until the lands should be completely logged and lumbered, but that it might be canceled by either party at any time, for any reason satisfactory to itself, upon 60 days' written notice of cancellation to the other party.

Upon the hearing had on the appellants' petition it was ordered that the contract with the Humptulips Logging Company be ratified and approved, and that the appellants' petition be dismissed. From that order the present appeal is taken.

John C. Hogan, of Aberdeen, Wash., C. S. Cushing and Cushing & Cushing, all of San Francisco, Cal., and Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., for appellants.

MacCormac Snow, of Portland, Or., for appellee Detroit Trust Co., and others.

Snow, McCamant & Bronaugh, of Portland, Or., and J. B. Bridges and Theo. B. Bruener, both of Aberdeen, Wash., for other appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The question which the appeal presents is whether or not the court below abused the discretion which was vested in it, in authorizing the receiver to operate the mortgaged property and to make the logging contract which he did. The court had before it these facts: The mortgagor, the mortgagee of the first and second mortgages, and the representatives of the majority of the claims secured by the third mortgage, all requested or assented to the appointment of the receiver with the authority to operate, and approved the logging contract which he made. If the mortgaged property were ordered sold at foreclosure sale, its full value would not be realized, and the proceeds thereof would be absorbed by the first mortgage. If properly conserved and operated, the properties would probably be sufficient to pay all the mortgages, and it was probable that within two years the Lumber Company would be enabled to refinance its indebtedness. The mortgagor was without available resources with which to meet the expense of caring for its properties or to pay the taxes thereon, and was in danger of having its properties sold for delinquent taxes, and there was danger of loss and destruction of the property by fire, if a force of operatives were not on hand to protect it.

The power of a court of equity to appoint a receiver in a foreclosure proceeding, with authority to continue the business of the mortgagor, is one which is cautiously and sparingly exercised, and only in cases where the interests of the parties require it, and usually the receiver will not be authorized to conduct a business permanently. In 34 Cyc. 284, it is said of the power of the court:

"It has the power, however, in the exercise of a wise discretion, to direct a continuance of a business, and to authorize its receiver to make expenditures and contract debts in that connection, when such a course seems necessary to preserve the property and to secure a more advantageous disposition of it."

The same doctrine is affirmed as to the court's power in foreclosure proceedings in 27 Cyc. 1631. Among the cases applying the doctrine are Cake v. Mohun, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447; American Pig Iron Storage Warrant Co. v. German, 126 Ala. 194, 28 South. 603, 85 Am. St. Rep. 21; Makeel v. Hotchkiss, 190 Ill. 311, 60 N. E. 524, 83 Am. St. Rep. 131; Leader Pub. Co. v. Grant Trust Co.,

182 Ind. 651, 663, 108 N. E. 121; Pacific Northwest Packing Co. v. Allen, 109 Fed. 515, 48 C. C. A. 521.

The appellants rely upon Couper v. Shirley, 75 Fed. 168, 21 C. C. A. 288, in which this court, in view of the statute of Oregon providing that a mortgage of real property shall not be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale according to law, held void the appointment of a receiver which was made solely upon the authority of a stipulation contained in the mortgage. But in that case we distinctly pointed out that the appointment had not been made by virtue of any of the established general principles of equity, which when alleged to exist, would authorize a court of equity to apoint a receiver, but was made solely in pursuance of the stipulation contained in the mortgage. We said:

"The sole question for our consideration is whether such a stipulation, of itself, authorized the court to make the appointment, under the laws of Oregon."

It seems unnecessary to say that in that decision there was no denial of the power of a court of equity to appoint a receiver under circumstances such as those disclosed in the case at bar.

[2] Again, it is to be observed that an appellate court will not reverse such an order as that which is here appealed from unless it appears that the discretionary power of the court "has been so improvidently and improperly exercised as to bring its action clearly within the meaning of the term 'abuse of power.'" Heinze v. Butte & Boston Consolidated Min. Co., 126 Fed. 1, 11, 61 C. C. A. 63, 73; United States Shipbuilding Co. v. Conklin, 126 Fed. 132, 60 C. C. A. 680; Briggs v. Neal, 120 Fed. 224, 56 C. C. A. 572. We discover no abuse of discretion in the case at bar, and we are of the opinion that the order of the court below, in view of all the facts, was made in the proper exercise of the court's discretion.

[3, 4] We are not impressed with the appellants' objection that the logging contract operates to deprive the mortgagees of the third mortgage of their right of redemption in a portion of the mortgaged property. They have as full opportunity to exercise that right as they would have under a foreclosure of the first mortgage, and they are free to exercise it at any time by satisfying the prior incumbrances, in which event the court below would necessarily direct the cancellation of the logging contract, and the discharge of the receiver. Moreover, the third mortgagees, by taking their mortgage subject to the first mortgage assented to the provision, therein contained, that the mortgagor might cut and remove timber on paying to the trustee of that mortgage the sum of $3 per thousand feet, the same sum which is realized therefor by the receiver under the logging contract authorized by the court below.

The order is affirmed.