## BAST v. BANK.

March 1, 1876, A., by way of collateral security for his notes of even date, payable four months thereafter, made an instrument in writing assigning to B., the payee of them, a judgment against C., and authorizing him to sell it, in case they should not be paid at maturity, and apply the proceeds to the payment of them. C., at said date, had sufficient personal property to satisfy the judgment. Execution was issued June 19, but that property had been previously exhausted by the levy of other executions. In a suit by B. against A. on the notes, — *Held*, 1. That B. was not bound by the terms of the assignment to take steps for the collection of the judgment before the maturity of the notes. 2. That, in the absence of accident, mistake, or fraud, evidence was not admissible to show his parol agreement, made contemporaneously with the assignment and as part of the transaction, to issue execution and collect the judgment whenever the money could be made thereon.

ERROR to the Circuit Court of the United States for the Eastern District of Pennsylvania.

The facts are stated in the opinion of the court.

*Mr. F. W. Hughes* for the plaintiff in error.

*Mr. R. M. Schick* and *Mr. G. R. Kaercher*, *contra*.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an action on three notes made by Bast, the plaintiff in error, to the First National Bank of Ashland, defendant in error, dated March 1, 1876, and payable four months after date, two being for $2,000 each, and the other for $3,481.79. Simultaneously with the delivery of the notes the following assignment in writing was made : —

" Know all men by these presents, that I, Emanuel Bast, do hereby transfer and assign to William Torrey, cashier, of Ashland, Pennsylvania, a certain judgment of June Term, 1875, in Court of Common Pleas of Schuylkill County, No. 1292, in which the First National Bank of Ashland is plaintiff, and the Ringgold Iron and Coal Company is defendant, and the three several drafts upon which the said judgment was obtained as collateral security for the payment of two notes of $2,000 each, and one for $3,481.69, made by me to order of William Torrey, cashier, dated March 1, 1876, payable in four months after date, and upon failure on my

part to pay said notes at maturity, or at the maturity of time, for which the same may be renewed, then the said Torrey, cashier, is hereby authorized and empowered to sell the same at public sale, after ten days' notice, to me, and apply the proceeds thereof to payment of my said notes, and in case the proceeds of same shall not be sufficient to pay said notes, then I promise to pay any balance that may be due.

"In witness whereof, I have hereunto set my hand and seal, this first day of March, 1876.

"EMANUEL BAST.    [SEAL.]

"Witness: A. P. SPINNEY, S. HENRY NORRIS."

Bast was at the time the owner of the judgment assigned, on which there was due the exact amount of his notes, and on each of the notes was an indorsement to the effect that the judgment assigned was held as collateral.   There was no legal impediment in the way of an immediate issue of execution on the judgment, and until May 19, 1876, the Iron and Coal Company, the judgment defendant, had unincumbered personal property subject to levy and sale on execution sufficient to pay the amount that was due.   No execution was issued until June 19, and before that time the property of the company had all been exhausted by the prior levy of executions issued on other judgments.   Bast made no demand on the bank to issue execution on his judgment at any time before June 19.

After the maturity of the notes the judgment was sold pursuant to the authority contained in the assignment and $2,141 realized, which was applied towards the payment of the notes. This suit was brought to recover the balance due after this application was made.

Bast filed an affidavit of merits, which in Pennsylvania has the effect, in cases of this class, of a plea, in which he alleges, 1, that it was the duty of the bank under the written assignment to have issued execution on the judgment prior to the time it did ; and, 2, " that simultaneously with his delivery of said notes to said bank as aforesaid, as well as said assignment of said judgment as collateral security for the same, it was agreed between deponent (Bast) and said bank, as part of the transaction, that said bank would issue execution upon said judgment and proceed to collect the same whenever the money

could be made thereon." He then claimed that, "by reason of the supine neglect of the plaintiff in not issuing execution as aforesaid, the said judgment assigned to it as aforesaid as collateral security for the payment of the notes sought to be collected in this case was lost and became worthless, whereby deponent suffered damages to an amount equal to the full amount due upon the notes in suit."

The court below held that the defence set up in the affidavit of merits was insufficient in law, and gave judgment for the bank for $5,440.46, the balance remaining due on the notes.

To reverse this judgment this writ of error has been brought.

Two questions are presented by the defence in this case.

1. Was the bank bound by the terms of the written assignment to take steps for the collection of the judgment before the maturity of the notes?

2. Was parol evidence admissible to prove the alleged promise, made simultaneously with the assignment and as part of the transaction, to issue execution and collect the judgment whenever the money could be made thereon?

1. As to the assignment.

No obligation to collect was in terms put on the bank by the writing. On the contrary, the only power conferred on the bank in reference to the judgment was to sell if the notes were not paid at maturity, or at the maturity of their renewals. All parties seem to have contemplated delay in the collection, and Bast seems also to have been especially careful to retain in his own hands the power to withhold execution if he saw fit. Until a sale was made under the express power granted for that purpose he continued the actual owner of the judgment, subject only to the lien of the bank to secure the payment of his notes. So far as any thing appears on the face of the written instrument, he retained full control of the collection by legal process; but whether that be so or not, he certainly could call on the bank at any time before a sale to take the necessary steps, or permit him to do so, to enforce its collection, or to secure and preserve such priority of lien as the judgment was entitled to over other judgments or executions thereon. If the bank had failed to comply with his demand, and loss had

ensued, other questions than such as are now presented might have arisen. But upon the face of the assignment we are clearly of the opinion that the bank put itself under no obligation to collect except on the demand of Bast. Any attempt to do so before the maturity of the notes, without his consent, would be a direct violation of the terms of the instrument under which it acquired all its rights.

2. As to the parol evidence.

No principle of evidence is better settled at the common law than that when persons put their contracts in writing, it is, in the absence of fraud, accident, or mistake, " conclusively presumed that the whole engagement, and the extent and manner of their undertaking, was reduced to writing." 1 Greenl. Evid., sect. 275. In Pennsylvania, the stringency of this rule has been very considerably relaxed, but we have been referred to no case where, in the absence of fraud or mistake, parol evidence has been admitted to alter the plain and unequivocal terms of a written instrument. In *Martin* v. *Berens* (67 Pa. St. 463), the court say: " Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and now that parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more imperative." In this case the Pennsylvania decisions are extensively reviewed, and the exceptions to the rule of the common law which they recognize carefully stated, but the conclusion is that, " as a general rule, it (parol evidence) is inadmissible to contradict or vary the terms of a written instrument." Again, in *Bernhart* v. *Riddle* (29 id. 96) this language is used : " Where parties have deliberately put their engagements in writing, and no ambiguity arises out of the terms employed, you shall not add to, contradict, or vary the language mutually chosen as most fit to express the intention of their minds. What if parol evidence prove, never so clearly, that they used such and such words in making their bargain ; the writing signed, if it contain not those words, is final and conclusive evidence that they were set aside in favor of the other expressions that *are* found

in the written instrument.    And hence this rule of law is only a conclusion of reason, that that medium of proof is most trustworthy which is most precise, deliberate, and unchangeable." This is the rule, it was said, which prevails in reference " to the *terms* in which the writing is couched," and that " evidence to explain the *subject-matter* of an agreement is essentially different from that which varies the terms in which a contract is conceived."    It is not always easy to determine when in Pennsylvania parol evidence is admissible to explain a written instrument, but in *Anspach* v. *Bast* (52 id. 356), it is expressly declared that " no case goes the length of ruling that such evidence is admitted to change the promise itself, without proof or even allegation of fraud or mistake.    The contrary has been repeatedly decided."    To the same effect is the case of *Hacker* v. *National Oil Refining Co.* (73 id. 93), as well as many others that might be cited.

In the present case, as we have seen, the contract which the parties reduced to writing is, in effect, that the bank should not, before the maturity of the notes, take measures to collect the judgment assigned without the consent of Bast.    The offer was to prove a contemporaneous parol agreement that it should do so.    This is a clear contradiction of the *terms* of the written contract, in a matter where there is no pretence of ambiguity, and where there has been no fraud or mistake.

We think the court below was right in giving judgment for the bank, notwithstanding the affidavit of merits.

*Judgment affirmed.*