### GREEN v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 6, 1899.)

#### No. 1,104.

1. CONTRACTS—RELEASE—PAROL EVIDENCE.

Where a contractor signed a release reciting that a payment then made was for a final estimate of work done and materials furnished, and in full payment thereof under the contract, and in full satisfaction, payment, and discharge of all claims and liabilities accruing out of said contract, parol evidence of an agreement with the agent of the other party that such payment should not cancel the original agreement, and evidence its complete execution, as provided, and that such estimate should be considered an intermediate one, is inadmissible.

2. SAME—CONSTRUCTION.

Evidence of the agent's statement that such release merely covered work then completed, and had no reference to the future, nor to the contractor's

right to continue the work under the contract, was not admissible, since, in the absence of fraud concealing the terms of a contract from the party executing it, parol evidence of prior agreements as to the meaning of its unambiguous terms is inadmissible.

3. SAME—CONSIDERATION.

A contract for the building of certain masonry for a railroad provided that the company should retain 10 per cent. of the estimates to be made during the progress of the work, until final completion, and that on the final estimate being made, and payment to the contractor of the amount due, the contract should be terminated. Before the work was completed, the company discontinued it, and made an estimate, paid plaintiff the whole amount due, and took his receipt releasing the company from all liability under the contract. *Held*, that such release was based on a suffi- cient consideration, viz. the mutual releases of both parties of liabilities before the contract was completed, and the provision inherent in the orig- inal contract that it should be terminated on final estimate and payment of the amount due.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

In July, 1890, J. A. Green, the plaintiff in error, made a written contract with the Chicago & Northwestern Railway Company, a corporation, and the defendant in error, to perform the labor and furnish the materials to con-struct the masonry for the bridges and culverts on its line of railroad between Clinton and Lisbon, in the state of Iowa. This agreement provided that the estimates of the amount and value of the work done, and of the materials furnished, should be made and paid monthly, "ten (10) per cent. being de-ducted and retained by the company until the final completion of the work embraced in the contract, when all sums due the parties of the first part shall be fully paid, and the contract considered canceled"; that the contract should be completed on or before March 15, 1891; that the railroad company should not be liable for damages if the whole or any part of the work was suspended or delayed; but that Green should have an extension of time to complete it, equal to any delay caused by the railroad company. Green entered upon the performance of the agreement, and proceeded with it until January, 1891, when the company stopped him. He resumed work under the contract in April, 1891, and continued until September, 1891, when the company again suspended operations. He had then received 90 per cent. of nine estimates, which amounted in the aggregate to $43,543.99; but the company had re-tained 10 per cent. of each of these estimates, to await the final completion of the contract. On October 19, 1891, he received $9,362.23, which consisted of the 10 per cent. retained from the former estimates, and the amount due to him on the work he had performed since the last previous estimate was made; and thereupon he executed and delivered to the company a release in these words:

"Chicago & Northwestern Ry. Co. to J. A. Green, Dr.: For final estimate of work done and materials furnished on his contract for masonry for bridges for 2nd track from Clinton to Lisbon, Iowa. August 11, 1890, to September 26th, 1891."

Here follows a statement of the quantities, kinds, and prices of all the work and material put in the masonry under the contract, the aggregate amount of which was $52,906.22; and then the receipt continues in this way:

"Received Oct. 19, 1891, of the Chicago & Northwestern Railway Company, the sum of nine thousand three hundred sixty-two $23/100$ dollars ($9,362.23), in full payment for work done and for material and supplies furnished under a contract between the said railway company and the undersigned, dated on the 15th day of July, A. D. 1890, for masonry for bridges for 2d track from Clinton to Lisbon, Iowa, and which is in full satisfaction, payment, and dis-charge of all claims on account of the work, supplies, or materials mentioned in said contract, and for all liabilities of said railway company in any manner arising or growing out of said contract.

"[Signed]                                         J. A. Green."

At the time this settlement was made, Green had deposited along the railroad some stone which had not been placed in the bridges or culverts, and this stone was not included in this final estimate.    In the year 1892 the company caused the remaining culverts and bridges between Clinton and Lisbon to be constructed by other contractors; and Green sued for the loose stone he had left along this track, and for the profits he would have made if he had been permitted to do this work.    He set forth his causes of action in two counts in his petition.    In the first one he pleaded the contract, the delivery of the loose stones along the track, their value, and the profits he would have realized if he had been permitted to put them in the form of masonry, and asked to recover $865.64 and interest.    In the second count he pleaded the contract, and the refusal of the company to permit him to construct the masonry for the bridges and culverts between Clinton and Lisbon, which had not been built in October, 1891, and sought to recover $8,000, which he averred he would have gained if he had been permitted to complete this masonry under his contract.    The company answered that it admitted that it had used some of the stones left along the track by plaintiff in error, and that it was liable for their value, but questioned the quantity and value alleged in the petition of the plaintiff, and denied that he was entitled to lay them up in masonry under the contract, or that he would have made any profit by so doing, if he had laid them.    A verdict and judgment in favor of the plaintiff were rendered upon the first count of the petition, and no question concerning this result is presented to this court.    In answer to the second count of the petition, the company pleaded the receipt and release of October 19, 1891, and alleged that it evidenced a cancellation of the contract, and a complete settlement and release of all liability of the company under it, except its liability for the loose stones along the track which it had subsequently used.    The plaintiff replied that before and at the time the release was signed there was a parol agreement between the parties that the company waived its right to withhold the 10 per cent. until the completion of the contract; that the final estimate was not final; that the contract was not canceled thereby, but was to continue in force; that the plaintiff was to continue to perform it at some future time; and that, although the release reads that the $9,-362.23 was received in payment and discharge of all claims and liabilities of the company under the contract, yet that was not the fact.    In support of the averments of this reply, the plaintiff testified, over the objections of the company, that, before and at about the time the final estimate and release was made, he had a conversation with Mr. Blunt, the chief engineer of the defendant in error, in which the latter said to him that the president of the company was going to discontinue work for the present, and he could not tell how long it would be before the work would be resumed; that, as the duration of the suspension of the work was so indefinite, it would not be fair for the company to retain the 10 per cent., and he would put it in his voucher; that the stone on the right of way would go into his next estimate when he built it into the masonry; that he would allow him to take his tools from the right of way of the railroad, to repair them, but that he wanted him to hold himself in readiness to build again; and that he agreed and promised to do so.    He also testified that no conversation was had about ending the contract; that he never received any consideration for the release, except the money due to him upon his work, and that, when it was presented to him for his signature, he objected to its form, and Mr. Blunt assured him that it was the company's general form of receipt, that it meant nothing but the work built up to that time, that it had no reference to the future; and that it was upon that understanding that he signed it.    At the conclusion of the trial, the court struck out this oral testimony, on the ground that it contradicted the written contracts of the parties, and instructed the jury to return a verdict for the company on the second count of the petition.    This is the ruling which is challenged by the writ of error in this case.

Charles A. Clark (James W. Clark, on the brief), for plaintiff in error.

F. F. Dawley and C. E. Wheeler (N. M. Hubbard and N. M. Hubbard, Jr., on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). A written contract is the highest evidence of the terms of the agreement between the parties to it, and, when those terms are clear and unambiguous, they cannot be contradicted or modified by parol evidence of the statements of the parties in the previous oral negotiations which led to it. In view of this rule, it becomes the duty of every contracting party to see to it that every agreement to which he puts his signature fairly and fully expresses the terms of his contract. He owes this duty to the party with whom he agrees, because the latter invariably pays his money or shapes his action in reliance upon the express terms of the agreement. If he fails to discharge this duty, his failure is the result of his own negligence; and he is, and ought to be, estopped thereby from showing that the terms of his contract were other than those expressed in the writing. Railway Co. v. Belliwith, 83 Fed. 437, 440, 28 C. C. A. 358, 361, and 55 U. S. App. 113, 119.

The real issue in the case at hand was whether or not the contract of July, 1890, ceased to be executory, and became executed, on October 19, 1891, when the release of that date was made and delivered. The claim of the company was that, by the express terms of the written agreements, it did become executed; and the contention of the plaintiff was that, in view of the terms of the contracts, and the oral testimony he produced, it remained executory. The contract of July, 1890, expressly provided that 10 per cent. of the amounts earned by the plaintiff under it should be retained by the company until the final completion of the work embraced in it, and that then all sums due to the plaintiff should be fully paid, and the contract should be considered canceled. In other words, it provided that the payment of the 10 per cent., and of all other sums due under the contract, should cancel the agreement, and evidence its completion. On October 19, 1891, after the plaintiff had suspended work the second time, he accepted the final estimate of, and payment for, all the work he had completed under the contract, including the 10 per cent. which was to be paid only when the contract was performed and canceled, and executed a receipt for $9,362.23, the balance due him on this basis, "in full payment for work done and for, material and supplies furnished under a contract between the said railway company and the undersigned, dated the 15th day of July, A. D. 1890, for masonry for bridges for 2nd track from Clinton to Lisbon, Iowa, and which is in full satisfaction, payment, and discharge of all claims on account of the work, supplies, or materials mentioned in said contract, and for all liabilities of said railway company in any manner arising or growing out of said contract." A final estimate, with a receipt and release at the foot of it, is the usual evidence of the completed execution of an agreement. This contract expressly provided that full payment for all the work and labor under it should cancel the agreement, and the plaintiff accepted full payment, and signed and delivered the final estimate and the complete release. How, then, does he seek to escape from the estop-

pel of these writings? He endeavors to do so in three ways: By testimony of the oral statements of Blunt, the engineer of the company, before and at the time when the release was made; by testimony that there was no consideration for the release; and by construction of the contracts.

Laying aside for the moment the question of consideration, the parol evidence upon which the plaintiff relies consists of testimony of the oral statements of Mr. Blunt prior to the execution of the release, and of his interpretation of its meaning when it was signed. The former tends to establish a parol agreement made before the release was executed, and while negotiations for it were progressing, to the effect that the payment in full for the work done under the contract, including the 10 per cent., should not cancel the original agreement, and evidence its complete execution, as it provided; that the final estimate which Green signed should not be a final estimate, but an intermediate one; and that, in essential particulars, the legal effect of the transaction should be contrary to that evidenced by the writings. No rule or principle of law occurs to us under which this testimony could have been admissible. It flies in the teeth of the rule that parol evidence cannot be received to contradict or modify written contracts, and of the conclusive presumption that the whole engagement of the parties, and the manner and extent of their undertaking, are expressed in their written agreements. McKinley v. Williams, 74 Fed. 94, 101, 20 C. C. A. 312, 319, and 36 U. S. App. 749, 761; Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1; Wilson v. Ranch Co., 73 Fed. 994, 999, 20 C. C. A. 244, 249, and 36 U. S. App. 634, 643. The testimony as to Blunt's interpretation of the release was equally objectionable. It was when Green was about to sign it that Blunt told him that it did not mean what it plainly read, that it covered nothing but the work up to that time, and that it had no reference to the future, when it expressly provided that he received the money in full payment and discharge of all work and materials mentioned in the contract, and of all liability of the railway company in any manner arising thereunder. The question which this evidence presents has been repeatedly considered and decided by this court, and our conclusion upon it has been embodied in this rule:

"No representation, promise, or agreement made or opinion expressed in the previous parol negotiations as to the terms or legal effect of the resulting written agreement can be permitted to prevail, either at law or in equity, over the plain provisions and just interpretation of the contract, in the absence of some artifice or fraud which concealed its terms, and prevented the complainant from reading it."

The reason for this rule is stated, many authorities in support of it are cited, and some of them are reviewed, in Insurance Co. v. McMaster, 87 Fed. 63, 68–72, 30 C. C. A. 532, 538–540, and 57 U. S. App. 638, and it is useless to repeat them here.

Turning now to the argument of counsel for the plaintiff in error upon the question of consideration, their contention is that the only consideration for the release of the liability of the company to pay for the work and labor done after October 19, 1891, was the fact

that the 10 per cent. of the amount already earned was paid before it was due; that it is always competent to prove by parol that a contract had no consideration to support it; that the company had the power to waive its right to retain this 10 per cent. until the contract was completed; that the plaintiff testified that it did so before the release was made; that he received no consideration for the release, except the payment for the work he had actually done, and the materials he had actually furnished, under the contract; and that this evidence establishes the want of any consideration for the release. In support of this position, much reliance is placed upon the case of Association v. Wickham, 141 U. S. 564, 580, 12 Sup. Ct. 84. In that case the defendants, who were the owners of a vessel, had two claims against the insurance companies, of about $15,000 each,—one for damages to the vessel by fire, and the other for the cost of raising and saving her cargo after she had been scuttled and sunk to stop the fire. Each claim was in existence, was known to both parties, and was just and incontestable. The companies adjusted the first claim, paid it 55 days before it was due, and took receipts which by their terms released them from all liability under their policies. There was testimony that before the payment was made the companies waived their right to retain the amount owing on the first claim until it was due; and the trial court instructed the jury that, if the prepayment of the amount owing on this claim was understood to be the consideration for the release of all claims, it was sufficient to sustain it, but that otherwise it was not. The supreme court invoked the rule that the payment of a part of an entire debt which is conceded or shown to be owing is no consideration for the release of the part not paid; declared that the payment of $15,364.78, which was the exact amount of the first claim as adjusted, constituted no consideration for the release of the second claim of $15,000, which was justly owing; held that the insurance companies might lawfully waive their right to retain the $15,364.78 until it became due, and that, if they did so before the release was made or agreed upon, there was no consideration for the satisfaction of the second claim; and sustained the charge of the court below. There is a marked distinction between that case and the one in hand. In the Wickham Case there were two debts in existence, established and known, and the payment of one was no consideration for the release of the other. In this case there was but one debt in existence, and that was paid in full. There was no other debt owing or due, and there was no knowledge on the part of either party that there ever would be one. The final estimate and receipt in the case at bar did not, in addition to the satisfaction of the debt actually owing, release or discharge another existing debt, but simply evidenced the agreement of the parties that no such debt should ever be incurred under the contract. Moreover, while we concede that the nature of the consideration for a contract, or the fact that there was no consideration, may be proved by parol, we are unwilling to adopt as a general rule the proposition that, where a single consideration is paid for a contract which contains several covenants or provisions, one may admit the receipt of the entire consideration,

and then escape from any of the provisions which seem burdensome to him by testifying that the consideration was not paid on account of those provisions, but on account of others which are less troublesome to him. The conclusive answer, however, to the contention of counsel for the plaintiff in error upon this question of consideration, is this: The real consideration for the agreement that the contract of July, 1890, became executed and functus officio on October 19, 1891, inhered in the original contract itself. That contract was valid and binding upon both the parties to it. It was supported by their mutual promises, and one of the covenants which it contained was that when the 10 per cent., and all the sums due under the contract, were fully paid, it should be considered canceled. They were fully paid, and by that payment itself, without more, the contract became executed, by its very terms. Not only this, but by the provisions of the final estimate and release of October 19, 1891, the parties agreed with each other that these sums were fully paid, and that the company was released from all liability under the original agreement. The payment of this money and the acceptance of this release by the company absolved Green from all obligations of further performance of the contract, as fully as it released the company from its undertaking to employ him. The result is that the mutual promises of the original contract and the mutual releases of the agreement of October 19, 1891, provide ample consideration for both agreements, without regard to the question whether or not the $9,-362.23 was paid before it was due.

But it is insisted that, under the true construction of the release itself, it must be confined in its effect to a satisfaction of plaintiff's claim for the specific work and labor described in it, and that it cannot have the effect of an agreement that the contract is executed. The familiar rules that the court may place itself in the situation of the parties at the time the contract was made, and then, in view of all the circumstances surrounding them, endeavor to ascertain the true meaning of their agreement; that, if its interpretation is doubtful, it should be construed more strongly against the party who prepared it; that, if it is ambiguous, the practical interpretation of the parties should prevail; that, where there is a particular recital followed by general words in a release, the latter are qualified by the particular recital; and that a release does not apply to claims of which the parties had no knowledge when it was made,—are invoked, and a learned and persuasive argument in support of the view of the counsel for plaintiff in error is presented under each rule. There are two reasons why the rules that the general words of a release are qualified by a particular recital, and that a release does not cover claims of which the parties had no knowledge, ought not to be applied to the agreements under consideration: One is that the original agreement on this subject, as we have attempted to show, is found in the contract of July, 1890, and the final estimate and release is but the agreed evidence that the contract has become functus officio, and that it is executed and canceled. The other is that the existence of the contract, and the question whether or not it was then completed and canceled, or continuing and executory, were

necessarily and actually in the minds of the parties when the release was signed. This appears from the terms of the release itself, as well as from the testimony of Green that he objected to those terms when he signed it. This release is not of the character of that quoted in Railway Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 16, and 19 U. S. App. 612, in which it was held that a release of a claim for damages on account of injuries to the person from a collision with a railroad car which was specifically described, and also "from all manner of actions, causes of action, claims, and demands whatsoever, from the beginning of the world to this day," did not cover a cause of action for malpractice, which was unknown to both parties when it was signed. The final estimate and release in this case is the customary evidence of the complete execution of a construction contract. The full payment which it acknowledged was the very fact which, by the terms of the contract itself, the parties had agreed should evidence its complete execution, and effect its cancellation. The release which acknowledged this payment was denominated the "final estimate." It recited the contract, and the receipt of all that was due under it, and then declared that the receipt of this $9,-362.23 was "in full satisfaction, payment, and discharge of all claims on account of the work, supplies, or materials mentioned in said contract, and for all liabilities of said railway company in any manner arising or growing out of said contract." Thus, the specific question whether the contract was thereafter executory or executed was specified and determined by the final estimate and agreement provided for by the original contract, and not by the mere general words of the release. No good purpose would be served by extending this opinion to review other general and familiar rules of construction. Such rules are helpful to ascertain the true interpretation of contracts whose terms are doubtful or ambiguous, but they cannot be permitted to abrogate those whose provisions are clear and certain. It is sufficient to say that a careful consideration of the agreements of the parties to this suit, in the light of these rules and of the circumstances under which the agreements were made, has failed to convince us that there was any error in the decision of the trial court that they disclose a binding written contract between the parties, unassailable by the parol evidence offered, to the effect that the agreement of July, 1890, was executed and became functus officio on October 19, 1891, when the final estimate, receipt, and release were signed and delivered. In view of this conclusion, all the alleged errors which we have not considered become immaterial, and the judgment below must be affirmed. It is so ordered.