## UNION SELLING CO. v. JONES.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1904.)

### No. 1,840.

1. **WRITTEN CONTRACTS—PAROL EVIDENCE.**

   Where a contract has been reduced to writing, and imports on its face to be a complete expression of the whole agreement, it will be presumed that the parties have introduced into it every material item and term; and hence parol evidence is inadmissible to add another term to the agreement, though the writing contains nothing on the particular point to which the parol evidence is directed. The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks; and the legal import can no more be varied by parol than can what is written.

2. **SAME—SURROUNDING CIRCUMSTANCES.**

   Though proof of the surrounding circumstances may be introduced to aid a proper construction of uncertain or ambiguous terms in a written contract, such surrounding circumstances do not include prior representations, proposals, and negotiations of a promissory character, leading up to and superseded by the written agreement.

3. **SAME—SALES—WARRANTIES—CONSTRUCTION.**

   Where a contract for the sale of binder twine contained the words "Quality guaranteed," such words were not uncertain or ambiguous, but should be construed to import a warranty that the twine was reasonably fit for the use for which binder twine is designed, and should be salable or marketable under that description, and hence parol evidence was inadmissible to show that such warranty, by reason of prior negotiations between the parties, was intended to include certain representations as to quality.

4. **SAME—DAMAGES.**

   In an action to recover for failure to deliver twine of the quality called for by the contract, the proper measure of damages is the difference between the actual value of the property at the time of the sale and what its value would have been if it had conformed to the warranty. Neither the vendee's right of recovery, nor the measure of his damages, is dependent on a resale by him, or upon the price obtained at a resale.

¶ 4. See Sales, vol. 43, Cent. Dig. §§ 1285, 1287, 1298.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action by Jones against the Union Selling Company to recover damages for the breach of an express warranty of the quality of twine sold to him by the company under a written contract entered into at Hastings, Neb., June 6, 1900, which described the twine and stated the warranty in this manner: "30,000 pounds of Binder Twine, Crown Brand, as follows: 27,000 pounds Standard, eleven cents per pound: 3,000 pounds Sisal, eleven cents per pound. Gross weight, delivered F. O. B. cars at Hastings. * * * Quality guaranteed." The twine was then in cars at Council Bluffs, Iowa, was to be shipped in a few days, and was to be paid for in cash upon the presentation of the bill of lading. Delivery of the twine and payment of the purchase price were promptly made. The Selling Company was a distributor or wholesale dealer at Omaha, Neb., in the products of the Standard Rope & Twine Company's Mills, which included the Crown brand of binder twine. Jones was a retail dealer in farm implements and binding twine at Hastings, and purchased this twine for sale to farmers in that vicinity, to be used by them in binding their grain. He was not familiar with, and had not dealt in, twine of the Crown brand. All this was known to the company when the contract was made. In addition to the above matters, about which there was no dispute at the trial, plaintiff's petition alleged that, when the contract was made, the words "Quality guaranteed" were agreed by the parties to refer to a proposed guaranty mentioned in a letter from the Selling Company to Jones, dated March 7, 1900, and that this letter was made a part of the warranty. The letter was set forth in the petition, and the portion containing the proposed guaranty reads: "We are the manufacturers of the Sewell & Day and Crown brands of rope and binder twine, and do not hesitate to guarantee the quality of these grades of twine, to be superior to that of our competitors. We quote you: Sisal & Standard binder twine 11¾c. per lb., Manilla binder twine 14¾c. per lb., pure Manilla binder twine 16¼c. per lb., in small lots F. O. B. Omaha. If you could use 10,000 lbs. or more we could name you a lower price. The twine which we will furnish is all new, of this year's make and put up in the new style 50 lb. flat bales. We have no doubt, but that the quality of the twine which we can furnish will be entirely satisfactory to you and your customers." It was then alleged that the warranty respecting the "quality, character, and condition" of the twine was broken by the Selling Company. "That said twine was not of good quality, and was not suitable for the purposes for which it was purchased by plaintiff. The quality of said twine was not superior to that of the defendant's competitors, but, on the contrary, was grossly inferior to the ordinary and average binding twine then upon the market. That the quality of said twine was not satisfactory to plaintiff or to his customers, and was not of a character with which either plaintiff or his customers ought to have been satisfied. And said twine was not all new, of the make of 1900, but, on the contrary, said twine was old and unsound, knotty, uneven, and much of it rotten and otherwise defective, and practically of very little value." Damages in the sum of $2,600 were alleged, and judgment was prayed for that amount. These matters were denied by the answer. A trial resulted in a verdict and judgment for plaintiff for $675, which defendant seeks to have reversed upon this writ of error.

James H. McIntosh, for plaintiff in error.

T. J. Mahoney and J. B. Cessna, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal controversy in this case is over the quality of twine required to satisfy the terms of the express warranty in the written instrument in which the parties stated their agreement. At the trial

the court took the view that it was permissible to determine this by reference to the negotiations which preceded and resulted in the making of the written contract. These negotiations covered a period of three months, and consisted of letter correspondence and separate conversations between the plaintiff and each of two agents of the defendant. All were admitted in evidence over the objection of the defendant. This ruling proceeded upon the theory that the terms of the written contract were uncertain and ambiguous, and could be explained and made certain by extrinsic evidence. If the letter of March 7, 1900, be accepted as giving certainty to the terms of the warranty, it would be satisfied only by the delivery of new binding twine, of the make of 1900, and of a quality superior to that of any binding twine sold by any of the defendant's competitors, and entirely satisfactory to the plaintiff and his customers. If one or both of the conversations be accepted as giving certainty to the warranty, then it would be satisfied only by the delivery of twine of equal quality with certain samples shown to the plaintiff at Omaha by an agent of the defendant during one of these conversations. In the plaintiff's petition the position was taken that the warranty should be interpreted by reading into it the letter of March 7th, and no reference was made to any samples of twine as having such relation to the transaction that they would give precision to the terms of the warranty; but at the trial the plaintiff gave in evidence both the letter and the conversations, although in thus offering an alternative of inconsistent interpretations he was obscuring, rather than clarifying, the meaning of the warranty, and was illustrating the mistake in resorting to this class of evidence to ascertain what is intended by an agreement expressed in writing. The contract makes no reference to the letter of March 7th, or to samples exhibited during the oral negotiations, and does not suggest that either of these was in the minds of the parties when they reduced their agreement to writing, or that the whole agreement is not completely expressed therein. The law applicable to such a contract is nowhere better expressed than in Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1. It was there said by Judge Mitchell:

"The only criterion of the completion of the written contract as a full expression of the agreement of the parties is the writing itself. If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed. The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks. 2 Phil. Evidence (Cow. & H. Notes) 669; Naumberg v. Young, 44 N. J. Law, 331 [43 Am. Rep. 380]; Hei v. Heller, 53 Wis. 415 [10 N. W. 620]. And the law controlling the operation of a written contract becomes a part of it, and cannot be varied by parol, any more than what is written. 2 Phil. Ev. (Cow. & H. Notes) 668; La Farge v. Rickert, 5 Wend. 187 [21 Am. Dec. 209]; Creery v. Holly, 14 Wend. 26; Stone v. Harmon, 31 Minn. 512 [19 N. W. 88]."

The rules embodied in this statement of the law are firmly established, and have been frequently declared in the decisions of this court and of the Supreme Court. Bast v. Bank, 101 U. S. 93, 96, 25

L. Ed. 794; De Witt v. Berry, 134 U. S. 306, 315, 10 Sup. Ct. 536, 33 L. Ed. 896;   Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; Harrison v. Fortlage, 161 U. S. 57, 63, 16 Sup. Ct. 488, 40 L. Ed. 616; Wilson v. New U. S. Cattle Ranch Co., 20 C. C. A. 245, 249, 73 Fed. 994; Grand-Avenue Hotel Co. v. Wharton, 24 C. C. A. 441, 443, 79 Fed. 43; Godkin v. Monahan, 27 C. C. A. 410, 83 Fed. 116; Insurance Co. v. McMaster, 30 C. C. A. 532, 540, 87 Fed. 63; Green v. Chicago, etc., Ry. Co., 35 C. C. A. 68, 71, 92 Fed. 873; Franklin v. Browning, 54 C. C. A. 258, 117 Fed. 226; Wilson v. Deen, 74 N. Y. 531, 534; Mast v. Pearce, 58 Iowa, 579, 8 N. W. 632, 12 N. W. 597, 43 Am. Rep. 125; Phillips v. Iola Portland Cement Co. (C. C. A.) 125 Fed. 593, 596; McQuaid v. Ross, 77 Wis. 470, 46 N. W. 892; J. I. Case Plow Works v. Niles & Scott Co., 90 Wis. 605, 63 N. W. 1013; Sylvester v. Carpenter Paper Co., 55 Neb. 621, 625, 75 N. W. 1092.

Where, without fraud, accident, or mistake, the written contract purports to be a memorial of the transaction, it supersedes all prior representations, proposals, and negotiations, and is conclusive evidence that it embodies such of these as were ultimately intended to become parts of the agreement, and that all others were rejected as not expressing the final intention of the parties.   Bast v. Bank, 101 U. S. 93, 96, 25 L. Ed. 794.  If there is uncertainty or ambiguity in the terms employed, the actual condition of things, and the position in which the parties stood at the time of making the contract, may be shown for the purpose of ascertaining the meaning of its terms.   Reed v. Insurance Co., 95 U. S. 23, 30, 24 L. Ed. 348; Phelps v. Clasen, 1 Woolw. 206, 212, 19 Fed. Cas. 445, No. 11,074.  That which may be so shown is frequently spoken of as the surrounding circumstances, but it does not include the prior representations, proposals, and negotiations of a promissory character leading up to, and superseded by, the written agreement.   These cannot be thus ingrafted upon it.   Union Stock, etc., Co. v. Western, etc., Co., 7 C. C. A. 660, 668, 59 Fed. 49; Bast v. Bank, 101 U. S. 93, 97, 25 L. Ed. 794; Oelrichs v. Ford, 23 How. 49, 63, 64, 16 L. Ed. 534; Ferguson Contracting Co. v. Manhattan Trust Co., 55 C. C. A. 529, 533, 118 Fed. 791.   Bradley v. Steam Packet Co., 13 Pet. 89, 92, 103, 10 L. Ed. 72, involved the use of extrinsic evidence to ascertain the meaning of a written contract "for the use of the steamboat Franklin, until the Sydney is placed on the route to Potomac Creek."   A controversy arose as to whether this covered the time when navigation was so completely stopped by ice that no boat could be used.   It was held permissible to prove the circumstances which accompanied the transaction, viz., that the defendant for several years had been, and then was, contractor for the transportation of the mail from Washington, D. C., to Fredericksburg, Md.; that the customary route of the mail was by steamboat from Washington to Potomac Creek, and thence by land to Fredericksburg; that the defendant kept an establishment of horses and stages for the transportation of the mail all the way by land at seasons when the navigation of steamboats was stopped by ice; that, when the contract was made, defendant's own steamboat had become disabled, and he was then about completing a new

boat, called the "Sydney"; that it was matter of notoriety, and was known to and understood by plaintiff, when the contract was made, that as soon as navigation should be closed by ice the mail from Washington to Fredericksburg would have to be transported all the way by land, instead of being transported by steamboat to Potomac Creek, and thence by land to Fredericksburg; and that the steamboat Franklin would not be required by defendant, and could not be used by him, when the navigation should be closed. It was further held, in that connection, that it was not permissible to prove that, in the negotiations antecedent to the making of the written contract, it was communicated to the plaintiff by defendant or his agent that the defendant intended to keep the steamboat Franklin in use so long as the navigation remained open, and no longer. Gilbert v. Moline Plow Co., 119 U. S. 491, 7 Sup. Ct. 305, 30 L. Ed. 476, was an action upon a letter of guaranty in which it was attempted to be shown by parol that a prior letter of the person who obtained credit by reason of the letter sued upon was to be taken as an explanation or part of the latter, but this was held not permissible, as the letter of guaranty contained no reference to the prior letter, and appeared to be complete in itself. Wiener v. Whipple, 53 Wis. 298, 10 N. W. 433, 40 Am. Rep. 775, was an action upon a written contract for the purchase of "300 bushels of barley," the quality of which was not expressly specified. It was sought to be shown by parol that the purchase was made by sample, and that the barley tendered under the contract was not of as good quality as the sample. In holding the evidence inadmissible, the court said:

"* * * For the purposes of this case, it is unnecessary to determine whether the merchantable quality of the barley to be delivered is a legal implication from the terms of the contract or not. It is enough for the determination of this case to know that there is neither an express statement in the writing, nor a legal implication from what is stated, that the barley was sold by sample, or that it should be of the quality of a sample furnished to the buyer at the time of the contract. This court has repeatedly held that where there is a written instrument binding upon both of the parties thereto, which in itself is a complete contract, capable of being understood and enforced, parol evidence cannot be resorted to to change its express provisions or their legal effect."

Gardiner v. Gray, 4 Camp. 144, was an action upon a written contract for the sale of what was described as "12 bags of waste silk." In rejecting parol proof of a sale by sample offered for the purpose of establishing the quality of the commodity intended to be sold, Lord Ellenborough said:

"I think the plaintiff cannot recover on the count alleging that the silk should correspond with the sample. The written contract containing no such stipulation, I cannot allow it to be superadded by parol testimony."

The same ruling was made in Meyer v. Everth, 4 Camp. 22.

The law controlling the operation of a contract is deemed to be, and usually is actually, within the contemplation and intention of the parties, as much as the words in which it is expressed, and becomes equally an essential part of it. Walker v. Whitehead, 16 Wall. 314, 317, 21 L. Ed. 357; Bulkley v. United States, 19 Wall. 37, 40, 22 L. Ed. 62; Hearne v. Ins. Co., 20 Wall. 488, 493, 22 L. Ed. 395;

Rogers v. Kneeland, 10 Wend. 219, 252; Johnston v. King, 83 Wis. 12, 53 N. W. 29; Manistee, etc., Co. v. Shores Lumber Co., 92 Wis. 28, 65 N. W. 865. For this reason the rule that a written contract cannot be varied by parol extends to the legal import or intendment of the contract, as well as to the terms or words in which it is written. The Delaware, 14 Wall. 579, 20 L. Ed. 779; Renner v. Bank of Columbia, 9 Wheat. 581, 587, 6 L. Ed. 166; Bank of United States v. Dunn, 6 Pet. 51, 8 L. Ed. 316; Brown v. Wiley, 20 How. 442, 447, 15 L. Ed. 965; Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647; Meehan v. Valentine, 145 U. S. 611, 625, 12 Sup. Ct. 972, 36 L. Ed. 835; Godkin v. Monahan, 27 C. C. A. 410, 83 Fed. 116; Mills v. Miller, 4 Neb. 441, 443; Wilson v. Deen, 74 N. Y. 531, 534; Thompson v. Libby, supra. A contrary view was declared by Mr. Justice Washington in Susquehanna, etc., Co. v. Evans, 23 Fed. Cas. 450, No. 13,365, but it was rejected by the Supreme Court in Bank of United States v. Dunn and Martin v. Cole, supra.

Turning now to the facts of the case under consideration, it was shown at the trial, as before stated, that the actual condition of things and the situation of the parties at the time of the making of this contract, and then understood and known by both of them, were these: The plaintiff was a retail dealer in binding twine, and was about to buy a supply of that commodity for sale to the farmers of his vicinity for use in binding grain; the defendant was a wholesale dealer in, or distributor of, binding twine of a brand or manufacture with which the plaintiff was not familiar; and the twine which became the subject of the sale was at a point remote from that where the contract was made, and therefore not open to the inspection of the plaintiff. Under these circumstances, the parties entered into a written contract for the sale by the defendant to the plaintiff of "30,000 pounds of binder twine * * * 27,000 pounds standard * * * 3,000 pounds sisal. * * * Quality guaranteed." It is not certain that there is any difficulty in understanding its language or effect when the face of the contract alone is considered, but, read in the light of these surrounding circumstances, which were competently proven, the meaning of the words employed and the intention of the parties are clear, and there is no doubt that the agreement is completely expressed. The legal import or intendment of such a contract is that the seller warrants that the article delivered shall, conformably to its description, be binder twine—that is, reasonably fit for the use for which binder twine is designed—and shall be salable or marketable under that description. This is the rational meaning, and in law the effect, of a warranty of quality, where no special quality is named and no words of limitation are used. Gardner v. Gray, 4 Camp. 144; Jones v. Just, L. R. 3 Q. B. 197; Dushane v. Benedict, 120 U. S. 630, 636, 7 Sup. Ct. 696, 30 L. Ed. 810; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 116, 3 Sup. Ct. 537, 28 L. Ed. 86; Van Winkle v. Crowell, 146 U. S. 42, 49, 13 Sup. Ct. 18, 36 L. Ed. 880; Cleveland Linseed Oil Co. v. Buchannan, 57 C. C. A. 458, 120 Fed. 906; Omaha, etc., Co. v. Fay, 37 Neb. 68, 75, 55 N. W. 211; Hastings v. Lovering, 2 Pick. 214, 13 Am. Dec. 420; Murchie v. Cornell, 155 Mass. 60, 29 N. E. 207, 14 L. R. A. 492, 31 Am. St. Rep. 526; Howard

v. Hoey, 23 Wend. 350, 35 Am. Dec. 572; Hoe v. Sanborn, 21 N. Y. 552, 562, 78 Am. Dec. 163; Id., 36 N. Y. 93, 98; Merriam v. Field, 29 Wis. 640; Best v. Flint, 58 Vt. 543, 5 Atl. 192, 56 Am. Rep. 570; Benjamin on Sales, §§ 656, 657; 2 Story on Contracts, § 1071; 1 Chitty on Contracts, 634; 2 Addison on Contracts, p. *975; Tiffany on Sales, 173.

The effect of permitting the plaintiff to prove the antecedent negotiations was to establish a standard for determining whether the warranty had been satisfied, and the extent of any departure therefrom, which was different from the standard which the parties had established for themselves by their final agreement expressed in writing. This was error.

Error is also assigned upon an instruction given to the jury to the effect that the price obtained by the plaintiff upon resales by him of the twine could not be considered in assessing his damages for the breach of warranty in the sale by the defendant. The plaintiff testified that the value of twine conforming to the warranty would have been 13 cents per pound, while 5 cents per pound was the full value of the inferior twine actually delivered. It was shown that most of the twine had been resold by the plaintiff at prices ranging from about 9 cents to 11 cents per pound, and that these sales were all with a warranty of quality. The proper measure of damages applicable to a case like this is the difference between the actual value of the property at the time of the sale and what its value would have been if it had conformed to the warranty. Schreiber v. Andrews, 41 C. C. A. 663, 666, 101 Fed. 763. And neither the vendee's right of recovery, nor the measure of his damages, is dependent upon a resale by him or upon the price obtained at a resale. At most, the price thus obtained may be some, but not conclusive, evidence of the actual value. Muller v. Eno, 14 N. Y. 597, 607, 609; Bach v. Levy, 101 N. Y. 511, 515, 5 N. E. 345; Brock v. Clark, 60 Vt. 551, 15 Atl. 175; Atkins v. Cobb, 56 Ga. 86, 90; Reggio v. Braggiotti, 7 Cush. 166, 169; Clare v. Maynard, 7 C. & P. 741, 32 E. C. L. 849. But where the resale is with a warranty of quality, or in ignorance of the actual quality, it is not any evidence of the value of the article in its inferior condition. Muller v. Eno, supra; Brown v. Bigelow, 10 Allen, 242; Miamisburg, etc., Co. v. Wohlhuter, 71 Minn. 484, 74 N. W. 175. There was no error in this instruction.

The judgment is reversed, with a direction to grant a new trial.