[No. 8051.   Department Two.   January 8, 1910.]

MICHAEL TOBIN, *Respondent*, v. JOHN McARTHUR *et al.*, *Appellants*.[1]

EVIDENCE—CONTRACTS—PAROL EVIDENCE TO VARY WRITING. Where a written subcontract for railroad construction fixed a price of 90 cents per cubic yard for "solid rock excavation," evidence of a contemporaneous oral agreement to the effect that solid rock excavation was to be classified according to the principal contract not then at hand, and solid rock excavation "under three feet" to be paid for at a rate of three cents less than the rate of the principal contract, or $1.22 per cubic yard, is inadmissible as varying the terms of the writing.

SAME. Parol evidence is inadmissible to show that a written contract is not complete by reason of a collateral oral agreement that part was intentionally omitted from the written contract and was to be incorporated later, where the written contract, by the voluntary act of the parties, included a complete contract on the subject-matter.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 29, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.   Reversed.

*Danson & Williams*, for appellants.

*Graves, Kizer & Graves*, for respondent.

CROW, J.—Action by Michael Tobin against John McArthur and J. J. Mangen, to recover for services rendered. From a verdict and judgment in favor of the plaintiff, the defendants have appealed.

On December 20, 1906, one H. C. Henry entered into a written contract with the appellants, John McArthur and J. J. Mangen, for the construction of a number of miles of railroad grade.   Thereafter and on January 1, 1907, the appellants, John McArthur, and J. J. Mangen, entered into a written subcontract with the respondent, Michael Tobin,

[1]Reported in 106 Pac. 180.

whereby they sublet a portion of the work to Tobin. By the Henry contract it was stipulated that the appellants should receive on rock work the following compensation:

*Per cubic yard.*

For scab rock excavation where the excavation from the
original surface of the rock to the roadbed is less than
three feet ..................................................... $1.25
For solid rock excavation............................... .93
For solid rock borrow (embankment measure).......... .60
For loose rock excavation............................... .42
For shell rock excavation............................... .33

By the written subcontract it was specified that the respondent should receive on rock work the following compensation:

*Per cubic yard.*

For solid rock excavation............................... $ .90
For loose rock excavation............................... .40

It will be noticed that there was a less detailed classification of rock work in the respondent's contract than in the Henry contract. Respondent's principal contention is that, at the time his written contract with appellants was executed, they did not have the Henry contract with them; that without referring to it they could not remember the exact compensation appellants were to receive from Henry for solid rock work under three feet; that prices in the subcontract were to be fixed in each instance at from two to three cents per cubic yard less than in the Henry contract; that not knowing the price to be received by appellants from Henry for solid rock work under three feet, a collateral oral agreement was entered into between respondent and appellants by which it was agreed that respondent should receive three cents per cubic yard for all solid rock work less than appellants were to receive from Henry; that as appellants were to receive $1.25 per cubic yard for solid rock work under three feet, the respondent was, under such collateral oral agreement, entitled to receive $1.22 per cubic yard for like work; that appellants had allowed him ninety cents only, and that they were indebted to him for all such work in the additional sum

of thirty-two cents per cubic yard.  The evidence shows that the term "solid rock under three feet" had reference to solid rock which before removal was located not more than three feet above the grade to be established.  The Henry contract used the expression "scab rock excavation," which the parties,. especially the respondent, seem to have regarded as referring to solid rock.

On the trial respondent offered evidence to show the alleged collateral oral agreement upon which he predicates his right to recover.  To this evidence, which was admitted, the appellants repeatedly and continually objected on the ground that it tended to contradict, add to, and vary the terms of respondent's written contract, which, without classification, fixed the price of all solid rock work at ninety cents per cubic yard.  The controlling contention of the appellants is that error was committed in the admission of such evidence.  An inspection of the contracts will show that solid rock work and prices therefor were classified in the Henry contract but not in respondent's contract, which latter contract fixed one compensation of ninety cents per cubic yard for all solid rock work.  It is evident that the solid rock work was a portion of the subject-matter of respondent's written contract, and manifestly any attempt to now classify it by showing an oral collateral agreement does contradict and vary the terms of the written contract which, upon its face, seems to be complete in every detail.  Although it contains no classification of any solid rock work as to depth, it does fix a price of ninety cents per cubic yard for all solid rock work without regard to depth, classification, or location.  If respondent is permitted to show by parol evidence that he is now entitled to a higher price than ninety cents per cubic yard for a portion of the solid rock work—that under three feet—appellant might also be permitted to show that respondent should receive less than ninety cents for solid rock work at other depths.  In either instance such oral evidence would contradict and vary the terms of the written contract solemnly

entered into between the parties. The general rule is, that in the absence of fraud or mistake, parol evidence is inadmissible to contradict, add to, or vary the terms of a written contract. The evidence of which appellants complain should not have been admitted as it tended to change the written agreement of the parties in a material respect.

In *Gordon v. Parke & Lacy Mach. Co.*, 10 Wash. 18, 38 Pac. 755, this court said:

"Where there have been collateral oral agreements and the parties have not, by their written contract, appeared to intend to reduce their entire negotiation to written form, there are many cases sustaining the admission of parol evidence concerning the unwritten terms of such agreements. 17 Am. & Eng. Ency. Law, p. 443; *Pierce v. Woodward*, 6 Pick. 206; *Chapin v. Dobson*, 78 N. Y. 74, 34 Am. Rep. 512; *Willis v. Hulbert*, 117 Mass. 151; *Graffan v. Pierce*, 143 Mass. 386, 9 N. E. 819. But in all of the foregoing, as well as in many other cases which might be cited, the written contract itself was resorted to as the source of authority for receiving parol evidence; and this is the universal rule. 'The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions. If, on the other hand, the writing shows its informality on its face, there will be no presumption that it contains all the terms of the contract.' "

See, also, *O'Connor v. Enos*, ante p. 448, 105 Pac. 1039; *Thompson v. Libby*, 34 Minn. 374, 26 N. W. 1; *Union Selling Co. v. Jones*, 128 Fed. 672; *Squier v. Evans*, 127 Mo. 514, 30 S. W. 143.

Respondent contends that the written contract between himself and the appellants was not complete; that material provisions fixing a portion of the prices to be paid were omitted therefrom, with the oral collateral agreement that

they should be ascertained later; that parol evidence to es-
tablish such collateral agreement, which was intentionally
omitted from the written contract was properly received, and
that it does not tend to vary or contradict the written con-
tract itself. The written contract is complete in its terms
and is necessarily presumed to have included the final agree-
ment of the parties resulting from their previous negotia-
tions. If there was a collateral agreement by which solid
rock work was to be classified and different prices paid there-
for, there is no apparent reason why the classification could
not have been stated in the written contract itself, in connec-
tion with the further agreement that the compensation for
solid rock work under three feet was to be three cents per
cubic yard less than the price fixed in the Henry contract.
It would have been an easy matter to have thus stated a rule
for fixing the price. Respondent in his brief has quoted
extensively from §§ 2430 and 2442 of Wigmore on Evidence,
and in substance contends that there is not a complete but
only a partial integration of the agreement in the written
contract; that the question of whether there was a complete
or incomplete integration is to be determined by the intent
of the parties, which must be first determined by the trial
judge and afterwards by the jury, as he insists was properly
done in this case. There is no necessity for indulging in any
discussion of complete or incomplete integration, or for go-
ing beyond the terms of the written contract itself to ascer-
tain the intention of the parties. It shows beyond question
that the subject-matter of solid rock work excavation was
considered and included within its terms. Mr. Wigmore, at
§ 2401 of his work on Evidence, in defining the term "in-
tegration," employed by him, says:

"The Integration of the act consists in embodying it in a
*single utterance* or *memorial,*—commonly, of course, a written
one. This process of integration may be required by law, or
it may be adopted voluntarily by the actor or actors; and, in
the latter case, either wholly or partially."

Here the process of embodying the legal act or contract of the parties into a single memorial was the voluntary act of the parties, and the written contract clearly covers the subject-matter now in dispute. At § 2425, Mr. Wigmore says:

"This process of embodying the terms of a legal act in a single memorial may be termed the Integration of the act, i. e. its formation from scattered parts into an integral documentary unity. The practical consequence of this is that its scattered parts, in their former and inchoate shape, have no longer any legal effect; they are replaced by a single embodiment of the act. In other words: *When a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act.*"

Under the rule contained in the italicized portion of the above quotation, italicized by the author himself, it becomes apparent that the oral evidence offered by the respondent was erroneously admitted.

The judgment is reversed and the cause remanded for a new trial.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.